or used by any of the defendants in this action, the luncheon pavilion on the Huber property, and the platform connecting same with the pier, the roller coaster and machine horse railway, in so far as these structures or any of them project beyond the present mean high-water line; which will be decided to be the same as shown on plaintiff's Exhibit 12, unless on the settlement of the judgment it shall be made to appear otherwise. The pier may remain, but suitable means of free passage under or around it must be maintained, and the pipe underneath it must be removed, if it interferes with such passage at any state of the tide. The jetty at the westerly side of the Huber property, constituting, as it does, a protection both to the beach and the upland, may remain, provided that convenient means are provided for passing over it or around the landward end for foot passengers and vehicles, which passage must be left open for all persons freely to travel over. The walk known as "Tilyou's Walk" constitutes a proper approach to the pier, and may remain, provided that a suitable and convenient means for passage underneath it, by persons on foot and for vehicles at all states of the tide, is maintained.

Submit decision and judgment accordingly, giving notice of settlement. Requests to find may be submitted on or before October 6th.

_____

(81 Misc. Rep. 654.)

COLORADO & S. RY..CO. v. BLAIR et al.

(Supreme Court, Special Term, New York County. July, 1913.)

1. PLEADING (§ 64*)—DUPLICITY—PARTIES—TRUSTEES.
    A complaint for specific performance of a contract for the sale of corporate stock, which also joins therein trustees under a mortgage covering the stock, for the purpose of compelling them to execute releases from the mortgage, the execution of which is necessary to enable plaintiff to secure a clear title to the stock to be conveyed, states but a single cause of action.
    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 134–137; Dec. Dig. § 64.*]

2. SPECIFIC PERFORMANCE (§ 127*)—PARTIES—NATURE OF RELIEF SOUGHT.
    Where a decree requiring the execution of such releases had already been secured in an action against the trustees for that purpose, the execution and delivery of the releases were merely ministerial acts, which could be required in the action for specific performance.
    [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 406–411; Dec. Dig. § 127.*]

3. ACTION (§ 50*)—MISJOINDER OF PARTIES—INTERESTED PARTIES.
    In equity the joinder of defendants who are interested in some phase of the action and are proper or necessary for a complete determination thereof does not constitute a misjoinder of causes of action.
    [Ed. Note.—For other cases, see Action, Cent. Dig. §§ 511–547; Dec. Dig. § 50.*]

4. SPECIFIC PERFORMANCE (§ 106*)—PARTIES—BONDHOLDERS.
    The holders of bonds secured by mortgage upon corporate stock, which the trustees under the mortgage have already been directed to release in an action brought for that purpose, are not proper parties in an action to compel the specific performance of a contract for the purchase

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the stock, in which the trustees are joined merely to secure the execution and delivery of the releases.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 342–351; Dec. Dig. § 106.*]

5. RAILROADS (§ 169*)—MORTGAGES—POWERS OF TRUSTEES.

The agency of trustees for the bondholders of a railroad is a special, not a general, agency, and is limited to the powers conferred upon the trustees by the mortgage securing the bonds.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 536–548; Dec. Dig. § 169.*]

6. RAILROADS (§ 169*)—MORTGAGES—POWERS OF TRUSTEES—RELEASE OF SECURITIES.

A clause in a mortgage securing railroad bonds, which authorized the trustees to release any portion of the premises covered thereby, not requisite for the use of the railroad, and parts of tracks, sidings, or roadway which have ceased to form any part of the railroad as operated, does not authorize the trustees to release stock of another railroad company owned by the mortgagor; and therefore the company cannot maintain an action for the specific performance of a contract for the sale of that stock upon the execution of a release thereof by the trustees.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 536–548; Dec. Dig. § 169.*]

Action by the Colorado & Southern Railway Company against De Witt C. Blair and others to compel the specific performance of a contract for the purchase of corporate stock. Defendants' demurrer to the complaint sustained.

A. C. Rearick, of New York City, W. P. Clough, G. H. Dorr and Kenneth B. Halstead, both of New York City, for plaintiff.

Byrne & Cutcheon, F. W. M. Cutcheon, Wm. R. Begg, and Harrison Tweed, all of New York City, for defendants Blair & Co.

PAGE, J. This is an action to compel specific performance of a contract for the sale of certain shares of stock by the plaintiff to the defendants, who are copartners, doing business under the firm name and style of Blair & Co. The defendants have demurred to the complaint upon the grounds: (1) That there is a defect of parties defendant; (2) misjoinder of causes of action; and (3) that the complaint does not state facts sufficient to constitute a cause of action against them.

The complaint, after setting forth the status of the several parties, alleges that the plaintiff corporation executed two mortgages upon its property to secure the payment of certain bonds, of which mortgages the Central Trust Company was trustee for the bondholders, but later the Equitable Trust Company of New York was substituted as trustee under the first mortgage. It alleges that the Colorado Midland Company is a corporation of the state of Colorado owning and operating a certain railroad in that state; that certain bankers in New York acquired all the stock of the Colorado Midland Company, and entered into an agreement with the Central Trust Company whereby all the stock of the Midland Company was transferred to the Central Trust Company, which issued two beneficial interest certificates, each representing a one-half interest in the stock of the Colorado Midland

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Company. One of these certificates was issued to the plaintiff and the other to the Denver & Rio Grande Railroad Company. The plaintiff immediately pledged its said certificate with the Central Trust Company, then trustee under its first mortgage, and a few years later assigned all its interest in the said stock and certificate to the Central Trust Company as trustee under its second mortgage, but subject to the lien of its aforesaid first mortgage.

The defendants, under the name of Blair & Co., on July 1, 1911, agreed to purchase the plaintiff's right, title, and interest in the stock of the Colorado Midland Company. By the said agreement it was provided that the—

"Colorado & Southern Railway Co. will forthwith upon the release of said beneficial certificate from the lien of said mortgage, by proceedings effectual in law and equity to accomplish such release, so that said certificate and all of the rights evidenced thereby shall be free and clear of all incumbrances created or suffered by the Colorado & Southern Railway Company, deliver to Blair & Co. said beneficial certificate duly indorsed in blank for transfer and an assignment to Blair & Co.," etc.

"Simultaneously with the delivery of said beneficial certificate as hereinabove provided, Blair & Co. will pay to the Colorado & Southern Railway Company the sum of one hundred and fifty thousand dollars ($150,000) in cash."

The contract contains further provisions that unless the stock be tendered to Blair & Co. within one year from July 1, 1911, Blair & Co. may, at their option, by notice in writing, terminate the contract, and, if the Colorado & Southern Railway Company after due effort made in good faith to obtain the release of the certificate from the liens of the mortgages shall be precluded from doing so by a final decree of court, the said Colorado & Southern Railway Company shall be relieved from making the tender and delivery thereof.

The plaintiff requested the trustees under the mortgages to release the certificates pursuant to their contract with Blair & Co., which was refused, whereupon the plaintiff, at the request of Blair & Co., instituted an action in the Supreme Court of New York county against the said trustees, in which it was decreed that the Equitable Trust Company, as trustee under the plaintiff's first mortgage, upon payment to it as trustee of the sum of $150,000, to be held upon the trusts declared in the said mortgage, should release the beneficial interest certificate from the mortgage and deliver it to the plaintiff, to enable the plaintiff to make delivery of the same to the purchaser. The decree likewise directed the Central Trust Company, as trustee of the second mortgage, to release the certificate from the lien of the second mortgage upon delivery to it of an instrument conveying to it the plaintiff's equity in the aforesaid $150,000.

The complaint further alleges that on June 25, 1912, the plaintiff procured releases from the trustees pursuant to the decree releasing the certificates from the liens of the mortgages, and tendered to Blair & Co. the beneficial interest certificate duly indorsed in blank for transfer, together with the releases from the mortgages aforesaid and an assignment to Blair & Co. of all the plaintiff's right, title, and interest in and to the stock of the Colorado Midland Company, and demanded of Blair & Co. the purchase price of $150,000, but Blair & Co. refused

to accept the tender and make payment. It is alleged that the plaintiff has always been and now is ready and willing and able to make and transfer to Blair & Co. a valid unincumbered title to the beneficial interest certificate, etc. Then follow allegations of facts to show that a money judgment would be inadequate and a demand for judgment that Blair & Co. be compelled to accept the plaintiff's tender and pay the purchase price and specifically perform their contract, and that the defendants Equitable Trust Company and Central Trust Company execute and deliver the releases aforesaid upon deposit with them of $150,000 and assignment of the plaintiff's interest therein.

[1, 2] I am of the opinion that the complaint states but a single alleged cause of action, namely, one against Blair & Co. for specific performance of their contract, and that the trustees under the mortgages are joined as proper parties in order to accomplish by a single decree a complete settlement of the matter. The relief asked for against them is incidental to the main purpose of enforcing specific performance, which cannot be done without the execution and delivery by the trustees of the releases demanded. A decree has already been entered in this court in a separate action, directing them to perform the said acts. The judgment roll in the former action is made a part of the complaint in this action in order to show that they are bound to perform the acts and to obviate the necessity of going into the merits of that question. The execution and delivery of the releases are merely ministerial acts which must be done in the course of the proper performance of the contract, and for this purpose alone the trustees are made defendants.

[3] It is well-settled law that in equity suits the joinder of defendants who are interested in some phase of the action and are proper or necessary for a complete determination thereof does not constitute a misjoinder of causes of action. Burns v. Niagara L. & O. P. Co., 145 App. Div. 280, 130 N. Y. Supp. 54; International Paper Co. v. Hudson River Water Power Co., 92 App. Div. 56, 86 N. Y. Supp. 736; Townsend v. Bogert, 126 N. Y. 370, 27 N. E. 555, 22 Am. St. Rep. 835; Hall v. Gilman, 77 App. Div. 458, 79 N. Y. Supp. 303.

[4] The holders of the bonds secured by the mortgages of the plaintiff to the Central Trust Company and Equitable Trust Company are neither necessary nor proper parties to this action. Neither the trustees nor the bondholders are parties to the contract which it is sought to have specially performed. In order to be able to perform that contract it was necessary for the plaintiff to secure the release of the certificate from the lien of the mortgages. In the prior action brought by this plaintiff against the trustees, the release from the lien of their mortgage of the beneficial interest certificate herein involved was decreed. Whether that decree is binding upon the bondholders so that a release from the trustees will be "effectual in law and equity," within the terms of the contract with Blair & Co., herein sought to be enforced, is a matter which must be determined in deciding whether or not the complaint states a cause of action against Blair & Co. If the former decree binds the bondholders, then they are not necessary parties to this action, as their rights in the matter have already been determined. If the former decree does not bind them because they were

not parties to the former action, then no cause of action is stated in this complaint against any of the defendants. The question, therefore, is not whether the bondholders are necessary parties to this action, but whether they should have been joined in the former action against the trustees. The demurrers on the grounds of defect of parties and misjoinder of causes of action are accordingly overruled.

In determining the sufficiency of the third ground of demurrer, that the complaint does not state a cause of action against the demurring defendants, the principal question involved is whether the title to the certificate tendered by the plaintiff to Blair & Co. was sufficient. This depends upon whether a release of the certificate from the lien of the mortgages, executed by the trustees pursuant to a decree of this court in an action in which the bondholders were not made parties, would bind the bondholders and be a release "effectual in law and equity" within the terms of the contract sought to be enforced. It is claimed by the plaintiff that the trustees in such an action represented the bondholders and had authority to bind them, and the bondholders, therefore, were not necessary parties.

[5] It must be conceded that in some cases the trustee of a railroad. mortgage is the agent of the bondholders. His agency is not, however, a general but a special agency, and circumscribed by the terms of the instrument whereby the trust is created. As to all litigation or other matters clearly within the powers and duties conferred upon him by the mortgage, he represents and may act for the bondholders, and they are not necessary parties. The essential question in each case therefore is whether the matter determined is one in which the trustee is expressly or by fair implication authorized to act for the bondholders. If not, then no decree of court in any action in which the bondholders are not parties can affect their rights.

Short, in his work on Railway Bonds and Mortgages, says at section 275:

"A bondholder has a clear right to stand upon his contract, and the trustees have no power or authority to compel him to make a new and different one. * * * Nor has he the power to discharge, change, or compromise the security, which he holds as trustee."

In Thompson on Corporations (2d Ed. § 2593) it is said:

"In order to make the acts of the trustee binding on the bondholders, the trust deed or mortgage by its terms must show that the trustee was authorized to represent the bondholders."

Similarly, the Special Term of this court held in Clark v. St. Louis, Alton & Terre Haute Railroad Co., 58 How. Prac. 21:

"Where a deed of trust directs, in plain terms, in what particular securities funds coming into the hands of the trustees shall be invested and how, until so invested, they shall be held, the court cannot, by its judgment, defeat the intentions of the creator of the trust and the beneficiaries thereunder by directing different investments. Without the consent of those beneficially interested in the trust, investments directed to be made in first mortgage securities cannot be made * * * in those of an inferior lien. For the purpose of securing such change in investment, the trustees do not represent the beneficiaries, and an action to this end cannot be prosecuted in their names; the beneficiaries not being parties defendant, and having no opportunity to be heard in relation to the propriety of granting such relief."

In Miller v. Rutland & W. R. Co., 36 Vt. 452, at page 487, the Supreme Court of that state said:

"We do not hold, nor do we assent to the position taken in the argument by one of the counsel for the defendants, * * * that the trustees have, under their trust, any agency to discharge, change, or compromise the security which they hold as trustees. They are not general agents of the bondholders, but special, and limited to the legitimate purposes of the relation they sustain to the security."

It is clear therefore that no power to release or alter the security of the mortgage or to represent the bondholders in litigation for that purpose exists in the trustees unless it be conferred by the terms of the trust deed. Kerrison v. Stewart, 93 U. S. 155, 23 L. Ed. 843, and Baltimore City v. United Rys. & Elec. Co., 108 Md. 64, 69 Atl. 436, 16 L. R. A. (N. S.) 1006, relied upon by the plaintiff in support of its contention, are both cases which depend upon the peculiar state of facts therein disclosed, and have no bearing upon the general proposition of law. Kerrison v. Stewart was an action to declare a deed of trust for the benefit of creditors void as to a certain creditor. It was there held that, because the trustee was by the terms of the instrument allowed absolute and unqualified discretion in regard to the trust property, its sale and availability for the payment of the debts secured, the creditors could not interfere with him in regard to its management, and that he was intended to be made their representative in all matters relating to it. This is practically a holding that in that particular case the trustee became the general agent of the creditors. It has therefore no application to the facts of the case at bar or any substantially different state of facts. In the second case (Baltimore City v. United Rys. Co., supra) the question was whether the trustees represented the bondholders in an action to release certain property from the security. It was there found that the mortgage contained an express clause giving that power to the trustee, which clause was by reference incorporated into a second mortgage involved. The case is therefore not an authority for the general existence of such a power.

[6] In the case at bar the mortgage deed confers no express authority upon the trustee to change or release the security except that which is contained in article 11, which authorizes the trustee, upon the request of the mortgagor, to release from the lien—

"any portion of the mortgaged premises appurtenant to any line of railroad subjected to the lien hereof or acquired or held by the mortgagor for any purpose incidental to the operation thereon, which, in the judgment of the mortgagor, shall at the time of such release be no longer requisite for use for the purposes for which the same shall have been so acquired or used * * * and likewise any parts of the tracks, sidings or roadway, which may have been thrown out of use and ceased to form part of the railroads operated by the mortgagor. * * *"

The presence of this clause granting a strictly limited power of release demonstrates clearly that there was no intention to confer upon the trustees a general or in any way discretionary power in such matters. It would be impossible to bring the property, which is the subject of this action, within the description of property concerning which

the power is granted by the deed. I am therefore constrained to hold that the deed conferred no power upon the trustees to release the certificate from the lien of the mortgage, or to represent the bondholders in litigation to accomplish that result, and that as to them the decree authorizing and directing the trustees to execute the releases is not binding upon the bondholders. The complaint does not show that the plaintiff has tendered the certificate to the defendant free of the mortgage, and does not therefore state facts sufficient to constitute a cause of action. The demurrer is accordingly sustained, with costs. If the plaintiff desires permission to serve an amended complaint within 20 days, upon the payment of costs, such provision may be made in the interlocutory judgment.

Demurrer sustained, with costs.