COLORADO & S. RY. CO. v. BLAIR et al.    (No. 5973.)

(Supreme Court, Appellate Division, First Department.   July 10, 1914.)

1. RAILROADS (§ 169*)—MORTGAGE—RELEASE OF SECURITIES.
    Plaintiff, a railroad corporation, which held a beneficial certificate in the stock of another company, after pledging it as security for its bonds, entered into an agreement to sell the certificate to defendant.  Plaintiff instituted an action against the trustee of the mortgage which refused to release the certificate, and the trustee was directed to release the certificate upon the payment to it of the amount defendant agreed to pay for the certificate.  *Held* that, as the bondholders had no title to the certificate, and as the trustee could realize upon it only after default, plaintiff was able to pass a clear title to the certificate; the certificate not being subject to any of the rights of the bondholders, though they were not made parties to the action against the trustee.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 536–548;  Dec. Dig. § 169.*]

2. TRUSTS (§ 366*)—ACTIONS—PARTIES.
    In an action involving the administration of a trust, courts of equity have a wide discretion as to who are necessary parties.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 574–583;  Dec. Dig. § 366.*]

3. SPECIFIC PERFORMANCE (§ 70*)—RIGHT TO.
    Where defendants, who agreed to purchase a stock certificate which plaintiff had pledged to secure its bonds, refused to carry out the purchase and to pay the purchase money either to the trustee who held the certificate or to plaintiff, plaintiff may resort to the equitable remedy of specific performance.
    [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 203;  Dec. Dig. § 70.*]

Appeal from Special Term, New York County.

Action by the Colorado & Southern Railway Company against De Witt C. Blair and others to compel specific performance of a contract for the purchase of corporate stock.   From an interlocutory judgment sustaining defendants' demurrer to the complaint (81 Misc. Rep. 654, 143 N. Y. Supp. 510), plaintiff appeals.   Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, DOWLING, and HOTCHKISS, JJ.

A. C. Rearick, of New York City, for appellant.
W. R. Begg, of New York City, for respondents.

INGRAHAM, P. J.   This action is for the specific performance of a contract dated July 1, 1911, by which the plaintiff agreed to sell, and the defendants Blair & Co. agreed to purchase, the "beneficial interest" owned by the plaintiff in certain preferred and common stock of the Colorado Midland Railway Company.   The agreement recited that such beneficial interest was created and is evidenced by a written agreement dated July 3, 1900, between the Central Trust Company of New York, J. Kennedy Tod & Co., and others, and by a written certificate dated December 27, 1900, made by the Central Trust Company under and in pursuance of said agreement and afterwards assigned to the plaintiff, copies of which are attached to the agreement; and it was

further recited that the rights evidenced by said beneficial certificate have been pledged or mortgaged by the plaintiff under its first mortgage and also under its refunding and extension mortgage. The plaintiff then agreed to sell, and Blair & Co. agreed to purchase, at the time and upon the conditions therein stated, the said beneficial certificate owned by plaintiff as therein recited, and all of the right, title, and interest of the plaintiff in and to the stock of the Colorado Midland Railway Company, and that the plaintiff would forthwith upon the release of said beneficial certificate from the lien of the said mortgages, by proceedings effectual in law and equity to accomplish such release, so that the said certificate and all of the rights evidenced thereby should be free and clear of all incumbrances created or suffered by the plaintiff, deliver to Blair & Co. said beneficial certificate duly indorsed in blank for transfer, and an assignment to Blair & Co. of all the right, title, and interest of the plaintiff in all the shares of stock of the Colorado Midland Railway Company then outstanding, and that, in the event of the failure of the plaintiff being unable to obtain such release of said stock from the lien of the said mortgages, then the contract should be deemed terminated and each of the parties should be released from any of the obligations thereunder.

The complaint alleges: That the plaintiff on the 12th day of January, 1912, duly notified the Trust Company of America, as trustee under the first mortgage, and the defendant the Central Trust Company, as trustee under the refunding and extension mortgage, that plaintiff had contracted to sell its beneficial interest in said stock of the Midland Company, and, to enable plaintiff to comply with its contract, demanded of said trustees respectively the release of the said beneficial interests and certificate representing the same, from the lien of the said mortgages; and, upon the refusal of said trustees to comply with said demand, the plaintiff, at the request of Blair & Co. and for the purpose of securing from the said trustees under the first mortgage and the refunding and extension mortgage of the plaintiff releases of the said certificate, commenced in the Supreme Court of the state of New York a suit in which the said Trust Company of America and the said Central Trust Company, as trustees, were defendants, whereby this plaintiff asked judgment decreeing the release by said trustees from the lien of said mortgages and the surrender of said beneficial interest certificate representing the stock in the Midland Company. That the said trustees were duly served with process and answered the complaint in said action, so that the court acquired jurisdiction of all the parties to said suit and over the property forming the subject-matter thereof. That the issues in said action were referred to a referee to hear and determine, who duly filed his report directing that judgment be entered in favor of the plaintiff; and that on April 26, 1912, judgment was duly entered in favor of the plaintiff directing that the defendant the Equitable Trust Company (who had succeeded as the trustee of the first mortgage), upon the payment to it of the sum of $150,000, the amount that Blair & Co. had agreed to pay for the said interest, to be held by said trust company upon the trusts declared in said mortgage, should release from the lien of said mortgage the said certificate of

beneficial interest in the Midland Railway Company and deliver the said beneficial interest certificate to the plaintiff to enable plaintiff to make delivery of said certificate to the purchasers thereof; and that the Central Trust Company, as trustee under the refunding and extension mortgage, should execute and deliver to the plaintiff an instrument in writing releasing and discharging from the lien of the refunding and extension mortgage said beneficial interest certificate then held by the Equitable Trust Company. A copy of said judgment is annexed to and made a part of the complaint. That prior to the 1st day of July, 1912, the Equitable Trust Company, as trustee under the first mortgage, and the Central Trust Company, as trustee under the refunding and extension mortgage, in due form as provided by the said final judgment, delivered to the plaintiff the beneficial interest certificate and executed a release from the liens of the respective mortgages of said beneficial interest certificate, and plaintiff duly tendered to Blair & Co. the said beneficial interest certificate in the stock of the Midland Company, duly indorsed in blank for transfer, together with said releases from said trustees and due assignment to Blair & Co. of all the right, title, and interest of the plaintiff in said stock, and plaintiff then or theretofore duly performed all the conditions to be performed on its part under said agreement of purchase, but Blair & Co., refused to pay the said sum of $150,000 or to accept the said certificate and the releases, and have refused to perform on their part.

[1, 2] To this complaint the defendant Blair & Co. demurred on the ground, among others, that it did not state facts sufficient to constitute a cause of action, and the Special Term sustained the demurrer on that ground, overruling the other grounds of demurrer. We agree with the court that the other grounds of demurrer were not well taken, and the only question that justifies discussion is: Does the complaint state a cause of action? As was said by the learned justice at Special Term:

"The principal question involved is whether the title to the certificate tendered by the plaintiff to Blair & Co. was sufficient. This depends upon whether a release of the certificate from the lien of the mortgage executed by the trustees pursuant to the decree of this court, in an action in which the bondholders were not made parties, would bind the bondholders and be a release 'effectual in law and equity' within the terms of the contract sought to be enforced."

This interest in the stock of the Midland Railway Company was personal property, and the title to the stock vested in the trustees; but, under the provisions of the mortgages, so long as default should not be made in the payment of either the principal or the interest of any of the bonds, and so long as the mortgagor should pay, keep, and perform all the terms and conditions of the bonds and the mortgages, the mortgagors should be entitled to retain possession of the mortgaged premises and receive the income and profits thereof, but upon the mortgagor's default the trustee was entitled to declare the principal of the first mortgage due and payable and to sell all the mortgaged premises, and might resort to any proceedings, legal or equitable, necessary for the enforcement of the security afforded by the mortgage. It would seem to be clear that the bondholders acquired no title to this stock of the Midland Company. The trustees held the title as

148 N.Y.S.—43

security for the payment of the principal and interest of the bonds, with power to sell all the mortgaged premises on default of the mortgagor, or to take legal proceedings to realize on the security. The trustees could not as against the mortgagor realize on the mortgaged property until default, but this provision was for the benefit of the mortgagor.

This stock being so held by the trustees under the mortgage, it appeared to the mortgagor that a sale of the stock of the Midland Company would be of advantage to all interested, and it requested the trustees to release the stock from the lien of the mortgage. This the trustees refused to do, whereupon an action was brought to compel the trustees to release the stock and to hold in its place the proceeds thereof as security for the bonds. The facts to show that such a sale was advantageous were set up in the complaint in that action, and the court, after hearing the parties, adjudged that the trustees, upon receipt of the purchase price of this stock, release from the lien of the said mortgages the certificate of beneficial interest in this stock of the Midland Railway Company. There can be no question but the court had jurisdiction of the subject-matter of the action and of the parties thereto. The judgment was binding on the parties before the court, and a release from the lien of the mortgages executed under its judgment discharged the stock from any right that the trustees had to the stock.

But the defendants insist that the bondholders had an interest in this stock which was not affected by the judgment, so that the title of the defendant Blair & Co. would not be free and clear of all incumbrances created or suffered by the plaintiff. I do not think, however, that the bondholders, as distinct from their trustee, had any interest in or title to this stock or to the interest pledged to the trustees as security for the payment of the bonds. They certainly had no title to the stock. That was vested in the trustees. If there was a default in payment of the principal or interest due on the bonds, the interest of the mortgagor in this stock was not to vest in the bondholders, nor could they at any time or under any conditions become its owners. What the trustees could do was just what this judgment directs shall now be done, namely, sell the stock and receive the proceeds; and the only right that the bondholders could have would be to apply to a court of equity to compel the trustees to execute the trust and sell this interest of the mortgagor in this stock. The mortgagor was not in default, and so the condition did not exist which would justify the trustees in selling this interest in the stock without the consent of the mortgagor; but I cannot see what would prevent the trustees, with the consent of the mortgagor, from selling this interest and giving a good title to the purchasers.

We are not now concerned with any claim that the bondholders would have as against the trustees for making such a sale if improvident or a violation of their duty to them. The only question now presented is whether a purchase from the trustees and the mortgagor will vest a good title in the purchaser. If any personal property, such as a bond and mortgage, or stock, or bonds of a corporation, is transferred to a trustee to secure the payment of a debt due to a third person, and there is no restriction as to the right of the trustee to sell the prop-

erty, and the trustee in good faith sells it and receives the proceeds, I do not understand that the beneficiaries can question the title of the purchaser. The general jurisdiction of a court of equity to enforce trusts authorizes it to make a decree construing the trust, defining the power and duties of the trustee, and directing the administration of the trust. It is largely in the discretion of the court as to who should be made parties to such an action, not a question of jurisdiction; and, where the legal title to personal property is vested in the trustee, the trustee represents the beneficiaries as to third parties, and, in a litigation in relation to it or to its disposition, I do not understand that they are necessary parties. Thus, where the question was presented as to whether it would be for the benefit of the trust, as well as for the benefit of the mortgagor, to sell this interest in the Midland Railway Company stock, the only necessary parties were the mortgagor and the trustees, and a sale by the trustees of the property under a judgment of the court would vest a good title in the purchaser, which could not be questioned by the bondholders.

[3] The learned counsel for the respective parties have most exhaustively examined the cases that have discussed this subject, but the views before expressed seem to me to be settled by the many cases cited; the settled rule being that where the subject of the trust is personal property and the title has vested in the trustee, and not in the beneficiaries, in all actions relating to the disposition of the property or the execution of the trust, as to third parties, the trustee is the only necessary party, and the beneficiaries are represented by him, and a judgment binds the beneficiaries. I think therefore that a transfer by the trustees and the plaintiff under the judgment of the court of the interest in the stock of the Midland Railway Company vested a good title to such interest in Blair & Co. The fact that under the judgment the proceeds of the sale must be paid to the trustee, and that Blair & Co. have refused to pay either to the plaintiff or to the trustee, justified an application to a court of equity. The complaint alleges that the plaintiff has no adequate remedy at law. That question should be left to be determined at the trial. I think therefore that the complaint states facts sufficient to constitute a cause of action, and that the other grounds of demurrer are not well taken.

It follows that the judgment appealed from should be reversed, with costs, and the demurrer overruled, with costs, with leave to the defendants to withdraw the demurrer and to answer upon payment of costs in this court and in the court below. All concur.