SARAH CARLETON ET AL. v. SAM'L A. ROBERTS ET AL.

(Case No. 2546.)

1. PLEADING — PERVERSION OF TRUST PROPERTY.— In 1854 certain citizens of the city of Bonham, and Fannin county, together with Masonic Lodge No. 13, established, by the subscription of money and property in sums from $25 to $1,000, an institution of learning, intended for the instruction of females alone, where no sectarian religious doctrines of any kind should be taught, — the lodge, by agreement of all parties, being selected as trustee, — and on January 24, 1856, Bailey Inglish donated ground on which to erect the necessary school buildings, conveying the land to the lodge . . . "to have and to hold the said four acres of ground unto the said Constantine Lodge in trust for the stockholders of the Bonham Masonic Female Institute." In 1868 the lodge sold and attempted to convey the land away; the purchaser took possession, opened a mixed male and female school, and undertook to make it a Campbellite institution. In a suit by a number of the subscribers to have the property restored to the use originally intended, *held:*

(1) The petition showing the suit was to enforce a trust for charitable uses, and prevent the perversion of the trust property to improper uses, disclosed a good cause of action.

(2) Evidence was admissible to show that by " stockholders," in the deed to the land, was meant subscribers to the institution; and

(3) That an election of trustees in accordance with the act of January 30, 1845, authorizing the appointment of trustees in certain cases, was not necessary to complete the organization of the institution, or essential to its existence. Dana *v.* Fielder, 12 N. Y., 40; 1 Greenl. Ev., sec. 288; Wharton, 939; Thomas *v.* Ellmaker, Select Cases in Equity, 110; Paschal *v.* Acklin, 27 Tex., 200.

2. PARTIES — WHEN VERY NUMEROUS.— While the rule that all parties in interest ought to be made parties is well established, so also are the exceptions to it; and where parties interested in the subject-matter of a suit are very numerous, some of them may maintain a suit for themselves and others interested in like manner. Story's Equity Pl., 94, 97, 114.

3. PLEADINGS — SHOWING GROUND FOR RELIEF.— A petition alleging a sale of trust property, its diversion from its intended use, and a direct repudiation of the trust by the trustee, shows sufficient cause why relief should be granted. Story, Eq., sec. 1199; Livingston *v.* Lynch, 4 Johns. Ch., 594.

4. EVIDENCE — NOTICE.— Parol evidence is admissible to establish a trust. The trust being declared in the deed to the trustee, the purchaser buys with notice of it. Abbott's Trial Evidence, 295; Reeves *v.* Bass, 39 Tex., 295; Greenl. Ev., 288; Wharton's Ev., 1042, 1044.

5. ASSIGNMENT OF ERRORS.— All errors not distinctly specified in the assignment of errors will be considered by the supreme court as waived. Clements v. Hearne, 45 Tex., 415; Elliott v. Mitchell, 28 Tex., 107; Howard v. Colquhoun, id., 134.

APPEAL from Fannin. Tried below before the Hon. John C. Easton.

The case presented by the appellees here (plaintiffs below) in their petition and its many amendments may be succinctly stated as follows:

In 1854 the Masonic Lodge No. 13, of Bonham, one of the defendants, and many citizens of Bonham and of Fannin county, became desirous of establishing and endowing, in Bonham, an institution of learning where none but females should be instructed, and where no sectarian religious doctrines of any kind should be taught.

With this object in view meetings of citizens were held, subscription lists were opened and circulated, conferences were held with the lodge, and a suitable site for the proposed school was sought.

The result was that one Bailey Inglish donated the lots of land in controversy for a site for a school of the character of the one above mentioned; many citizens donated sums of money ranging between $1,000 and $25, to be expended in establishing such an institution on that site (and among them were the appellees), and the lodge, itself a subscriber, agreed, at the instance of all concerned, to act as trustee for this institution. It was understood that the fruits and income accruing from the institution, if any, should be appropriated to keeping up the institution forever. And that in the control of the institution, each subscription of $50 should be counted a share and entitled to one vote.

Accordingly, Inglish, valuing these lots at $400, on the 24th January, 1856, made a conveyance of them to the " Constantine Lodge, No. 13, of Free and Accepted Masons, . . . to have and to hold the said four acres of land unto the said Constantine Lodge, in trust for the stockholders of the Bonham Masonic Female Institute."

The subscriptions were paid in, a school-house erected and

a non-sectarian female school placed in successful operation. Unfortunately the buildings were soon destroyed by fire; but new subscriptions were made to rebuild and re-establish the school upon the same principles, and it was soon rebuilt and re-established upon a firmer basis than before. The lodge continued to act as trustee of this non-sectarian female school in accordance with the trust imposed upon it by the founders of the school until about the year 1868.

On the 18th April, 1868, the lodge attempted to convey and sold to Mrs. Carleton, one of the appellants, all their right, title and interest, power of occupation and use in these four acres of land.

Afterwards Mrs. Carleton, joined with her husband, on the 27th December, 1870, conveyed to Frank J. Abernethy, another of the appellants, an undivided one-third part of the same lots.

These appellants took possession of this school under the above recited conveyances, and, instead of carrying out the objects of the original trust, converted the property and its profits to their own use, opened a mixed male and female school, and, abandoning the original non-sectarian character of the school, seem to have attempted to give it a sectarian complexion, and to make it a Campbellite institution.

On the 4th of March, 1871, the appellees, comprising a large number of the founders of this non-sectarian female school, filed this suit in the district court of Fannin county, setting up the above stated facts against the appellants and the Constantine Lodge, charging the Carletons with full notice of the trust under which the lodge had hitherto held the property, and praying for a decree annulling and canceling the conveyances from the lodge to the appellants and for the restoration of the original trust.

To the petition of the plaintiff, the defendants Carleton and Abernethy demurred, generally and specially. The special causes assigned are, that the petition does not show who held the public meetings referred to, or that directors were thereat appointed, or that they constituted a body politic or corporate with power to grant or receive a trust,

or that ten days' notice was given of such meeting, or who was appointed president or secretary, or that the citizens elected by a majority of votes a suitable number of trustees, or that any certificate of the election of trustees was forwarded to the recorder of Fannin county or recorded.

The defendants Carletons and Abernethy answered, denying all the allegations of the plaintiffs. They alleged that they were purchasers of the property in good faith for value, and pleaded the limitation of three and five years. They deny the trust as set out in the petition, or any knowledge of it, and aver that the lodge was the legal and equitable owner of the property, who sold to them; that they have been and are conducting a school for male and female pupils of high grade, in the buildings. There is no special relief prayed for by defendants.

The lodge answered, alleging their willingness to resume the trust.

The case was submitted to a jury, who found a verdict for the plaintiffs, and judgment was rendered thereon for a restitution of the property to Constantine Lodge, to be held and administered by it in trust for the maintenance of a female school for the citizens of the town of Bonham and vicinity, and restraining them from diverting it to any other use; that the deeds to Carleton and wife and Abernethy be canceled, etc.

The defendants moved for a new trial, which being overruled, they appealed.

It is assigned for error, in substance:

1. That the court erred in overruling the defendants' demurrer and special exceptions.

2. In admitting in evidence the testimony of Fuller and others as to statements made by Inglish, previous to the execution of the deed, as to the purpose of the deed.

3. In admitting testimony of Inglish's declarations that he put in the land as stock, and was a stockholder in the school enterprise.

4. In the charge to the jury.

5. In refusing charges asked.
6. In refusing a new trial.

*Maxey & Chenoweth*, for appellants.

*Hancock, West & North*, for appellees.

QUINAN, J.— The questions presented by the demurrers, it is believed, are not difficult of solution. That the petition disclosed a good cause of action is, we think, free from doubt. The objections urged by the appellants are: 1. That there was no legal association under the title of the Bonham Masonic Female Institute capable of holding property; that the word stockholders implied shareholders in an incorporated company, and no act of incorporation was averred.

The object of this suit is to enforce a trust for charitable uses and to prevent the perversion of the trust property to improper uses. The organization and maintenance of a school for females at Bonham was a public charity. A conveyance of property to that use without naming any trustee would be held good and enforced in equity, and if trustees were necessary, a court of equity would appoint them; for as the maxim is, so laudable "a charity would never be suffered to fail for want of a trustee." But here there is a trustee, the "Constantine Lodge," capable of holding property for charitable uses and administering the same. In the conveyance to the lodge of the property, the trust is declared to be for the stockholders of the "Bonham Masonic Female Institute." If there were no such stockholders the trust would not fail. The charitable purpose is impressed on the face of the instrument. A court of equity would construe the deed so that it might stand, and would construe it liberally in favor of the charity. There being (strictly speaking) no stockholders, proof would be heard to determine who are meant by the term. Evidence is admissible always "to show the surrounding circumstances of the parties and of the subject of the contract, and the usages of language under which the instrument was written, in

order to read the instrument with the same knowledge with which the party wrote it." Dana *v.* Fielder, 12 N. Y., 40. And the circumstances surrounding the transaction, as detailed in the petition, show that by stockholders was meant subscribers — not stockholders, strictly, because they were not incorporated; not partners or stockholders in a joint-stock company, for here there was no community of profit or loss; no termination of their association by the death or withdrawal from the enterprise of any of its members; no taking of profits in severalty, nor contemplation of profits for private use, but the future fruits and income of the institution about to be established were devoted forever to its maintenance, and to be diverted to no other purpose whatever. Thomas *v.* Ellmaker, Select Cases in Equity, 110; Paschal *v.* Acklin, 27 Tex., 200; 1 Greenl. Ev., sec. 288; Wharton, 939.

2. It is objected that the petition does not show the election of trustees and proceedings had in accordance with the act of 30th January, 1845, to authorize the appointment of trustees in certain cases. That act provides how, in certain cases, trustees may be elected at a public meeting and qualified, and so constituted a body politic and corporate, capable of holding property, of suing and being sued; but it is not contended that the subscribers to the Bonham Masonic Female Institute were, by virtue of the provisions of that act, incorporated, nor was it contemplated. The plan of their organization was that the masonic lodge should become trustee, and that only those contributing to the fund should have a voice in the direction of the administration of the institution. That statute has no relation to their association, nor does it follow, that because, by its terms, provision is made for incorporation of societies for the building of school-houses, meeting-houses, parsonages, and dedicating camp-grounds, that the same laudable undertakings can be accomplished in no other way.

3. It is also objected that the petition discloses numerous other parties having an interest, who are not made plaintiffs or defendants in this suit.

While the rule that all parties in interest ought to be made parties is well established, so also are the exceptions. to it.

One is, where (as the petition in this case discloses) the parties are very numerous, and it would be impracticable to join them; that it would produce interminable delay and would probably obstruct the purposes of justice.

Another is, where parties form a voluntary association for public or private purposes, and those who sue or defend may fairly be presumed to represent the rights and interests of the whole. In these cases the suit may well be brought by the plaintiff, either alone or with others, in behalf of himself and all others interested. Story's Eq. Pleading, 94, 97, 114a, 115.

And another exception to the general rule is in respect to public charities; that the same strictness is not required either as to parties or to pleadings as in ordinary cases. Story, Eq. Pl., § 8.

4. The petition in this case sets out sufficient cause why relief should be granted. The sale of the trust property to Carleton, and by Carleton to Abernethy, the diversion of it from the maintenance of a school solely for females, to a mixed school for males and females, and from one not to be conducted on sectarian grounds, to one under the control of a particular religious denomination, were acts directly opposed to the scheme of the founders of the institution. There was moreover alleged a direct repudiation of the trust. It is held adversely to them. This was just such a case as entitled the subscribers to the charity to the aid of a court of equity to prevent the perversion of the fund to which they have contributed to other uses. " Regarding this association," says Chancellor Kent in a similar case, " in the aspect of a charity, nothing can be clearer than that a court of equity will not suffer its funds to be diverted to other uses than the donors intended." Livingston v. Lynch, 4 Johns. Ch., 594. And Judge Story says, " in such cases, if there be any abuse or misuse of the funds by the trustees, the court of chancery will interpose, at the instance of the attorney-general or the parties in interest, to correct such

abuse or misuse of the funds. . . . If the trustees of the charity should grossly abuse their trust, a court of equity may go to the length of taking it away from them, and commit the administration of the charity to other hands." Story's Eq., § 1199.

5. The other errors assigned in the case will require but a very brief notice. They are directed to the charge of the judge, his refusal to give charges asked, the improper admission of testimony, and his refusal to grant a new trial on these grounds, and that the verdict was against the law and evidence.

Objections were made to the admission of the testimony of the witnesses Fuller, Bean and others, to prove the declarations of the grantor, Bailey Inglish, that he put the land in as stock in the school enterprise, as he had no money to give, on the ground that it does not appear in writing so as to bind him, and that it tends to vary the deed, was made prior to it, and was not made in presence of the lodge. It is not easy to perceive the force of these objections. Parol evidence is admissible to establish a trust.

This is especially so where the trust is to charitable uses; "for charities are also so highly favored in law that they have always received a more liberal construction than the law will allow in gifts to individuals." Story's Eq., 1165. So parol evidence is admissible to show the consideration of a deed, as in this case that Mr. Inglish's recital of the consideration of $400 received for the land was in fact but intended to express the value of the stock he was taking, or the donation he was making in the grant of this land to the charity. Again, the objection to this testimony could only be made by the lodge, and the lodge did not object, nor has it appealed. It was immaterial, also; the trust was declared in Bailey Inglish's deed. They had notice and made inquiry, and were, or might have been, fully acquainted with the history of its creation and its objects before they received the conveyance to them. It even appears that their attention was specially called to the fact, by various persons, that the property was subject to the trust, and they were acquir-

ing no title by the purchase. It did not concern the Carletons in fact by whom the money was paid or the contributions were made. Abbott's Trial Ev., 295; Reeves *v.* Bass, 39 Tex., 295; Greenleaf, Ev., 288 *et seq.;* Wharton's Ev., 1042, 1044.

6. The assignment of error in the judge's charge is made in these terms: "The court erred in the charge given to the jury, as shown by bill of exceptions." Referring to the bill of exceptions, we find the exception to be "to the charge as given by the court to the jury."

So, also, the assignment of error in refusing charges is stated in the same general terms: "The court erred in refusing to give the jury the charges asked by defendants, Nos. 1, 2, 3, 4, 5, 6, 7 and 8;" and these numbers comprise all the charges asked.

Repeated decisions of the supreme court have determined that an assignment of error in these terms is not a sufficient compliance with the provisions of the statute, which requires that they shall be specific, and provides that all errors not so distinctly specified shall be considered by the supreme court as waived. Pas. Dig., art. 1591; Clements *v.* Hearne, 45 Tex., 415; Elliott *v.* Mitchell, 28 Tex., 107; Howard *v.* Colquhoun, 28 Tex., 134.

We have examined, however, the record carefully, and find no error apparent in the charges given or in the refusal to give those asked.

The charges asked and refused were, in the main, a reiteration of the propositions which we have considered, as urged in the defendants' demurrer — that the "stockholders of Bonham Masonic Female Institute must be stockholders in a joint-stock company or incorporation, and have a legal existence, capable of suing and being sued; that they must have articles of association recorded, or otherwise the plaintiffs cannot recover. That the parol evidence offered in respect to the trust deed was not competent proof; that the plaintiffs must prove the consideration of the deed paid by them." These charges were properly refused. Others were asked upon the subject of acquiescence by the plaintiffs, of which there was no proof.

7. The assignment that the verdict is against the evidence is subject to the same objection as the preceding, and might be passed without comment. But looking into the statement of facts, we cannot say that it is without evidence to support it. The material facts stated in the petition were proved by competent testimony — the creation of the charity, the contributions toward it by the plaintiffs and others, defendants' knowledge of the trust, and the diversion of the property to other uses. The defendants claimed the property as their own, and held it adversely to the plaintiffs as discharged of any trust.

Whether, under the circumstances of the case, they had any equity to claim a restoration of the money they had paid, or whether anything might be due them upon taking an account of the rents and the value of improvements, is not before us for consideration. There is no judgment for rents or damages, and they have asked no relief.

We find no error committed which would require a reversal of the judgment, and it will be affirmed.

· AFFIRMED.

[Opinion delivered November 1, 1880.]