## BINGHAM et al. v. GRAHAM et al.
### (No. 1570.)

(Court of Civil Appeals of Texas. Amarillo. March 24, 1920.)

**1. Receivers ⊚⟺29(1)—Appointment made before suit brought void.**

Appointment of receiver of property of a company is void where made before institution of suit.

**2. Appeal and error ⊚⟺920(5)—Appointment of receiver held valid where record does not affirmatively show contrary.**

Where it appears from the record that petition was filed with clerk of court on a certain date, and order appointing receiver bears the same date, and there is nothing in the record to show that the order was made before the petition was filed, contention that appointment is void because made before petition was filed will be overruled; presumption being that proceedings of trial court were regular and legal.

**3. Appeal and error ⊚⟺715(2)—Matters outside of record affecting jurisdiction not considered.**

Courts of Civil Appeals will not consider affidavits outside the record tending to show want of jurisdiction in lower court.

**4. Joint-stock companies ⊚⟺20—Receiver may be appointed though corporation not made party.**

In suit by stockholders of an oil company, a joint-stock association, against trustees, alleging insolvency and misappropriation of trust funds, etc., *held* that, though the company was not eo nomine made a party, the court had authority, despite Vernon's Sayles' Ann. Civ. St. 1914, arts. 6149–6154, to appoint a receiver for the property in view of the broad powers vested in trustees by the articles of association.

**5. Appeal and error ⊚⟺955—Appointment of receiver not usually interfered with.**

Appellate courts will not ordinarily interfere in the appointment of receivers unless a clear abuse of discretion is shown.

**6. Appeal and error ⊚⟺1170(1)—Appointment of receiver where corporation not a party not reversible error.**

In view of rule 62a, as to reversal only in case error probably caused rendition of improper judgment, appointment of receiver in suit by stockholders against trustees of stock association, though company was not made a party, was not reversible error, appellant having filed no motion to discharge receiver or raised question of nonjoinder in trial court.

**7. Parties ⊚⟺1—"Necessary party" defined.**

A "necessary party" is one who is so vitally interested in the matter that a valid decree cannot be rendered without his presence as a party.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessary Parties.]

**8. Joint-stock companies ⊚⟺20 — In suit against trustees for accounting association held not a necessary party.**

In suit by stockholders of an oil company, a joint-stock association, against trustees, alleging insolvency and misappropriation of trust funds, etc., and praying for appointment of receiver, *held*, that the association, while a proper party, was not a necessary party.

**9. Appeal and error ⊚⟺187(3)—Nonjoinder of parties waived where not raised below.**

Appellant waived the question of nonjoinder of proper parties by failing to raise it in the lower court.

**10. Joint-stock companies ⊚⟺20—Appointment of receiver in suit against trustees of joint-stock association proper.**

The case made by the pleadings being one in which trustees are sued by some of the beneficiaries in behalf of others alleging insolvency of trustees, breach of trust, misconduct, misapplication of trust funds, refusal to account for and pay over income, fraud in executing a fictitious note and mortgage, loss of trust funds, etc., the rules governing cases of trust and appointment of receivers for trust estates apply.

**11. Joint-stock companies ⊚⟺20—Allegations of petition authorized appointment of receiver ex parte.**

In suit by stockholders of an oil company, a joint-stock association, against trustees, alleging insolvency and misappropriation of trust funds, etc., *held*, that allegations of petition showed a case within Vernon's Sayles' Ann. Civ. St. 1914, art. 2128, subd. 1, as to the appointment of receivers where partners or others jointly interested show that property or funds are in danger of loss, and authorized court to appoint a receiver ex parte.

**12. Receivers ⊚⟺40—Where no answer filed allegations of petition to be taken as true.**

The allegations of a petition to which no answer was filed must be taken as true on hearing a motion of plaintiff to appoint a receiver.

Appeal from District Court, Dallam County; Reese Tatum, Judge.

Action by W. P. Graham and others against C. S. Bingham and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

R. E. Stalcup, of Dalhart, and Kimbrough, Underwood, Jackson & Simpson, of Amarillo, for appellants.

Tatum & Strong, of Dalhart, for appellees.

HALL, J. Appellee Graham, joined by 79 other parties, some of them being nonresidents of the state, as plaintiffs, filed their petition in the district court of Dallam county against G. E. Martin, W. A. Poole, J. L. Allred, and B. N. Richards, trustees of the Texline-Burk Oil Company, a joint-stock association, joining as defendants C. S. Bingham, E. L. McCullough, G. F. Ward, T. J. Fletcher, W. E. Dyche, and Dallam County Bank of Texline, a joint-stock association,

praying for the appointment of a receiver, without notice, of all the property of the Texline-Burk Oil Company; that citation issue to each of the defendants; that upon a final hearing an accounting be had; that judgment be rendered in favor of plaintiffs for the use and benefit of themselves and other interested shareholders who may intervene for all sums of money misappropriated by the trustees of the association or other named defendants requiring them to pay the same into court; for a judgment against the defendants Bingham and Poole for any amount of profits illegally charged the association on the oil and gas lease referred to; that a judgment be rendered in favor of plaintiffs herein or so many of them as purchased any of the illegal increased capital stock; against the organizers, defendants herein, for the respective amounts paid for such stock; that the deed of trust lien be canceled; that the holder or holders of certain notes, if defendants herein, be required to cancel and surrender said notes; and for such other and further relief, in law and equity, etc. The petition alleges, in substance:

That on or about the 19th day of October, 1918, C. S. Bingham, W. A. Poole, E. L. McCullough, J. L. Allred, G. E. Martin, G. F. Ward, and W. R. Dyche formed a joint-stock association, adopting the name of "Texline-Burk Oil Company" as its firm name, for the following purposes:

"(1) To secure an oil and gas lease on 2½ acres of land in Wichita county, Tex., out of the William P. B. Du Bose survey; and (2) to develop the above described property; and (3) to produce oil and gas and to sell the same."

That said parties executed written articles of association, with an agreed capital of $60,000, divided into 12,000 shares or interests of the value of $50 each; that said articles of association, among others, contained the following:

"(a) The capital stock of the company may be increased from time to time by a vote of a majority of the stockholders held pursuant to the articles of association and such by-laws as may be adopted from time to time.

"(b) When any increase of the capital stock is authorized and offered for subscription, the shareholders of the company appearing of record at the time the stock is offered for subscription shall, unless they expressly waive it, have the prior right for a period of ten days after notice to them to subscribe for and purchase such stock increase at a price to be fixed by the board of trustees, not less than par, in the same proportions in which they own the existing capital stock. The notice provided for in this article shall be given by mailing a letter addressed to each holder of a share or shares to his registered post office address, and the notice period shall begin with the day such letter or notice is mailed.

"(c) The entire affairs of the company shall be managed by a board of trustees consisting of three members, each of whom shall own at least one certificate of membership in the company for not less than one share.

"(d) The first board of trustees, which is hereby appointed, shall be composed of J. L. Allred, G. E. Martin, and W. A. Poole, who shall continue in office until the first Monday in October, 1919, and until their successors are elected as herein provided for.

"(e) Each board of trustees shall elect its own president, such vice presidents as it may see proper, secretary, and treasurer, and may create such other offices, filling them by appointment, and prescribing their duties as they may deem wise, necessary, or convenient to carry on the business of the company.

"(f) The title of all property acquired or to be acquired from time to time by the company and all investments shall be made and held in the names of the then trustees, as such, the survivor or survivors of them, under a declaration of trust for and on behalf of the company. Such trustees shall hold said property as joint tenants, and not as tenants in common upon the trust and with the power herein stated, provided, however, for convenience in handling the business of the company the title to real estate may be held in the name of any one of said trustees under the same declaration of trust heretofore referred to.

"(g) The trustees shall, by a vote of a majority of the board of trustees, have full power and authority to conduct the business of the company, to make necessary repairs, to borrow money on the credit of the company, executed upon such terms as they may deem proper to secure an oil and gas lease as provided for in article 2, and generally to do and perform all things which in their judgment may be necessary and proper in the management and conduct of the business of the company, except as restricted and instructed as follows:

"(1) The trustees shall not use the funds or earnings of the company to secure oil or gas leases except as provided in article 2, but may use the funds and earnings of the company to develop said lease property described in article 2.

"(2) The trustees are hereby instructed to prepare and to pay to stockholders (shareholders) a dividend on the net earnings or profits of the company once a month, provided, however, that said net earnings or profits shall amount to at least 10 per cent. of the outstanding capital stock.

"(h) A declaration of trust in accordance herewith shall be executed by the trustees appointed hereunder, binding alike on them, their survivors of them, their successors, and their survivor or survivors, and all persons dealing with them.

"(i) At any annual meeting of the shareholders or any special meeting called for the purpose the articles of association may be amended by a vote of three-fourths of the shares present and represented, and by-laws may be adopted, amended, or repealed, except section 1 of article 2 and paragraph 9 of article 7 (relating to the payment of dividends), which shall not be amended or repealed in any respect not inconsistent with the articles of association, by a vote of two-thirds of the shares present or represented.

"(j) The board of trustees shall, whenever they think it necessary, call a special meeting

of the shareholders, stating the purpose thereof upon notice to that effect deposited in the post-office at the place of the principal office of the company, addressed to each shareholder at his registered post office address ten days before the date of the proposed meeting.

"(k) The president, or in his absence a vice president, shall sign all certificates of membership, preside at all meetings of the board of trustees and of the shareholders, and shall do and perform and render such acts and services as the board of trustees shall prescribe and require, and shall receive such compensation for service as may from time to time be fixed by the board. The secretary or the assistant secretary shall countersign all certificates of membership and shall keep such minutes, records, and books as the board of trustees may require, attend all meetings of the board, and render such other services as may be imposed upon him, and shall receive such compensation as may be fixed by the board from time to time. The treasurer shall perform such duties as the board may impose upon him, and shall receive such compensation as may be fixed by the board from time to time.

"(l) The trustees, or a majority of them, and the secretary, shall from time to time, as the articles or by-laws are amended or repealed, certify under the seal of the company to the same as amended to the date of certification, and their certificate to that effect shall constitute full proof of the facts thereby shown.

"(m) The certificate of stock shall be issued and signed by the president of the company and countersigned by the secretary or assistant secretary, and shall show the number of interests of shares owned by the holder of said certificate."

It is further alleged that the board of trustees elected defendant Bingham as president, defendant McCullough as secretary, and defendant Poole as the treasurer, which offices they still hold; that plaintiffs are the holders of more than 200 shares in said joint-stock association, and as such sue for the use and benefit of themselves and such other shareholders as have bought and paid for their stock in the association; that thereafter, on and before the 1st day of January, 1919, the defendants (other than the defendants Richards and the Dallam County Bank) offered for sale and sold shares in the association at the par value of $50, 200 of said shares being purchased and paid for by plaintiff, who sold certificates of stock issued by said officers; that as said shares were sold by the defendants they issued a written contract signed by said officers (other than the defendants Richards and said bank) wherein and whereby they represented to all purchasers of stock that said association had a capital stock of $60,000; that it owned an oil and gas lease of 2½ acres out of the southeast corner of the 50-acre tract of the Du Bose survey, in the Burkburnett oil field, in Wichita county, Tex., and contracted and agreed to and with said purchasers of stock that the association would begin an oil well as soon as the capital stock was placed, said well to be drilled to

what is known as the Fowler sand, unless oil or gas was found in paying quantities at a lesser depth, said well to be drilled, equipped and together with said lease to be delivered to the stockholders.

It is further alleged that, after selling and disposing of the capital stock and receiving the $60,000 therefor, the trustees failed and refused to carry out their duties as provided in the articles of association, and to drill or cause to be drilled a well of any kind on said 2½-acre tract; that, contrary to and in violation of the articles of the association, the defendants sought to increase the capital stock, and did about the month of February, 1919, increase the capital stock $7,000, and thereafter sold such increased capital stock, issuing certificates to the purchasers thereof in due form; that, if any attempt was made to increase the capital stock, it was without notice to or knowledge of the stockholders and in violation of the rules and regulations of the association, and such increase and issue of certificates was void, except that the money received by defendants for such increased capital stock creates outstanding indebtedness against the association to that extent; that the trustees fraudulently misappropriated the funds of the association to the amount of $3,500 in acquiring from the defendants Bingham and Poole a lease on 1¼ acres of land in Wichita county, said lease being executed May 1, 1919, and that said misappropriation was in violation of section 1, art. 2, of the articles of association, for which said trustees are personally liable to plaintiffs and other shareholders; that they also misappropriated a large sum of money of the association, in that they fraudulently caused a well to be drilled on said 1½ acres of land, which well was completed during the month of April, 1919; that said well was drilled on said land with the funds of the association prior to the time the trustees had acquired any written lease of the property, and while the title was in other persons than the trustees; that they acquired said land from Bingham and Poole, who were then officers of the association, through a conspiracy on the part of said Bingham and Poole and said trustees, paying them and other defendants who were interested in the lease a profit of at least $10,000, although Bingham and Poole did not have at any time any individual funds, but had purchased the land upon the credit of and with funds belonging to the association, and fraudulently acquired the title thereto in their individual names, and immediately thereafter transferred the same to the association.

It is further alleged that, although repeated demands have been made on the trustees and officers for a financial statement as to the condition of the association, and of the receipts and disbursements made by the trustees and officers, said demands having

been first made about May 1, 1919, and continued and repeated to the present time, they have failed and refused to furnish a financial statement or to inform plaintiffs or other stockholders as to receipts and disbursements, or make any report as to the condition of the affairs of the association, showing its assets and liabilities, save and except that they prepared and mailed to the shareholders a printed letter about the 10th day of June, 1919, in which they stated that the first well had been completed; that it was not producing as much as they anticipated, but the pipe line receipts showed its production to be approximately 30 barrels of oil daily. Said letter further states that they had a contract with the company to take the casing head gas which would yield some income, and would have a tendency to increase the production of oil; that they were in communication with a contractor to drill one or more wells on the west 2½-acre lease and promising to keep the stockholders advised of any action taken by the trustees in that regard. It is further stated in said letter that the expenses were heavy, that there would be no dividends available for a few months, but that they were operating as economically as possible.

It is further alleged that on or about the 11th day of June, 1919, 56 of the shareholders presented to the defendants a written statement requesting the following information:

"(1) A statement of the stock issued and paid for in said association.

"(2) The net proceeds from the sale of said stock paid into the association.

"(3) An itemized accounting of the expenditures of said association to the 1st day of June, 1919.

"(4) An itemized statement of the proximate cost of the maintenance of the well and any overhead expenses, such as salaries.

"(5) A statement as to the number of barrels of oil pumped to June 15, 1919, and the date from which production started, the price at which said oil is being marketed, and the name of the pipe line company to which it is being furnished.

"(6) A general financial statement of the association to June 1, 1919, showing all assets and liabilities.

"(7) The names of the officers receiving and disbursing the funds and whether or not said officers are under bond."

In said written request it was suggested that said statement be either published or filed with the secretary so as to be available for inspection by all parties interested on or before the 1st day of July, 1919. That the officers and trustees have wholly failed and refused to furnish any kind or character of information, as requested by said writing; that although the well on said 1¼-acre tract was completed during the last days of April, 1919, and has been producing continuously since said date, no dividends have been declared nor any information imparted to the stockholders; that said trustees have incurred an indebtedness in excess of $10,000 over and above the receipts of said association and in addition to the funds that said company so misappropriated as hereinbefore alleged; that said well, instead of being revenue-producing, has been so mismanaged by the trustees as to be a loss and an expense rather than an asset; that said trustees are each and all insolvent; that on or about the 23d day of June, 1919, they executed a fictitious note to the defendant Dallam County Bank in the sum of $9,997.32, due one day after date, bearing interest at the rate of 8 per cent. per annum from date, and at the same time executed to B. N. Richards, as trustee, a deed of trust conveying the said oil and gas lease and all the personal property, effects, tools, goods, wares, and merchandise belonging to the association for the purpose of securing payment of said note; that said note and mortgage were executed for the fraudulent purpose of enabling the bank and Richards to summarily dispose of all the assets of said association and deprive the stockholders thereof; that the makers of the deed of trust and the defendant bank all well knew and were informed at the time of the execution of the note that the association was insolvent; that the proceeds from the well were little more than sufficient to pay the cost of operating the same in the manner in which it was being done, and that there was no possibility that the association or trustees would have any funds with which to discharge the note due one day after date; that plaintiffs are informed that the mortgaged property is now being offered for sale under the deed of trust, and, unless restrained, it will be sold without notice to the shareholders, and the money applied to the payment of said fictitious note; that the association has never at any time really been indebted to said bank, and, unless prevented, said bank will acquire title to and possession of all the property and effects of the association; that said trustees have not at any time given the duties incumbent upon them their personal attention, but that they placed the drilling of the well in charge of a person known to them to be unworthy of the trust and turned over to him large sums of money, without exacting a bond or other security from him; that the said person shortly thereafter absconded with about $2,000 of the funds of the association, which has never been recovered nor refunded nor any part thereof; that after said well began to produce oil they placed the same in charge of a person wholly inexperienced with such work, all to the great loss of the shareholders, and that they are paying such person a large salary for his services; that, although they have made diligent effort by repeated requests to be furnished with a list of all the stockholders, the officers and trustees have failed and refused to give them

such information; that plaintiffs have further requested and demanded that the books showing the shares, interests, and amount of stock sold and issued and the books showing the receipts and disbursements of the company be exhibited to them, and such requests have been refused; that the treasurer has heretofore informed and advised these plaintiffs that he has never been furnished with any kind or character of books of accounts, or handled any of the funds received by or paid out by the trustees, and that he knows nothing concerning the receipts and disbursements.

Plaintiffs charge that the defendant Bingham has in his custody and possession the books, accounts and records of the association, and, although demand was made upon him in person to exhibit the same to plaintiffs, he has failed and refused and still fails and refuses to exhibit the same to them. Plaintiffs charge upon information and allege the facts to þe that the trustees are now seeking to sell and dispose of all the property by alleged authority of the articles of the association, and, if permitted to do so, they will sell the same at a price far below its market value; that the trustees are wholly insolvent, as all of the assets of the association have been dissipated, save and except the property covered by the deed of trust, and all of the assets on hand out of which the plaintiffs have any present hope of receiving any portion of the funds consist of the proceeds of said assets, save and except such amounts as they may be able to recover from the defendants; that the oil from said well is being pumped from day to day by the Greater Texas Company, at an agreed price unknown to plaintiffs, and that the party in charge of the well is failing and refusing to pay said company for its services rendered in pumping the oil from said well, in consequence of which the Greater Texas Company is now threatening to take immediate possession of the well, tools, tanks, and other assets of the association, and that the trustees will not seek to prevent the same, and if they do the said company will at once institute suit and levy court process upon all of said property and subject the same to the payment of their debt; that the said trustees have long since abandoned the direct management, supervision, or control of the affairs of the company, and have left the same in the hands of a wholly inexperienced person, to the great detriment of the shareholders; that said trustees are now offering for sale and may sell and dispose of the said property before they could be properly restrained by writ of injunction, for the reason that part of them are in the Burkburnett oil fields, a place where it is almost impossible to reach a person by court process, and it would be impossible to get court process of any kind promptly served upon them; that the trustees, de-

fendants herein, being personally insolvent, and having spent, wasted, misappropriated, and dissipated all of the funds of the association, and having incurred very large indebtedness, and there being on hand but a small amount of assets out of which claims can be paid, it is of great importance that as much of same be saved as possible; that because said defendants may not have properly placed the title to the above-described real estate as required by the articles of the association, although it was paid for with the funds of the shareholders, it is essential that a receiver be appointed to take charge of the same, prevent its alienation, and hold it for the benefit of the plaintiffs; that others of the defendants than the trustees are now in the oil fields and in and about Burkburnett and Electra, their whereabouts being unknown, and cannot be reached by the ordinary process of law, so as to give them proper notice of this action within a reasonable time.

[1-3] The first question to be considered is raised by the fifth proposition in the appellant's brief, by which it is asserted that the appointment is void for the reason that it was made before the petition was filed and the suit instituted. It appears from the record that the petition was filed with the clerk of the district court of Dallam county July 18, 1919. The order appointing the receiver bears the same date, and there is nothing in the record to show that the order was made before the petition was filed. The rule is, as contended for by appellant, that the court has no right to appoint a receiver prior to the institution of the suit. Webb v. Allen, 15 Tex. Civ. App. 605, 40 S. W. 342; Howell v. Harris-Cortner & Co., 168 Ala. 383, 52 South. 935, Ann. Cas. 1912B, 236, and note. Accompanying the record is an affidavit made by the clerk of the district court of Dallam county in which he states that at the time the petition was filed with him on the 18th day of July the district judge had attached to and affixed to the petition his order and fiat appointing J. N. Cole as receiver of the Texline-Burk Oil Company. If this affidavit related to or affected the jurisdiction of this court, it could be considered, but, since it goes to the jurisdiction of the trial court only, we cannot consider it. Courts of Civil Appeals will not hear evidence outside the record tending to show want of jurisdiction in the lower court. Poole v. Mueller, 30 S. W. 951; T. & P. Ry. Co. v. Hood, 59 Tex. Civ. App. 363, 125 S. W. 982. Such being the state of the record, the presumption of the legality and regularity of official acts and that the proceedings of the trial court are regular and legal obtains, and this contention must be overruled.

[4] The next proposition urged and to be considered is that, because the Texline-Burk Oil Company was not eo nomine made a party to the suit, the court had no authority to

appoint a receiver for the property. While the proposition states the general rule, it should not be enforced here by reason of the broad powers vested in the trustees by the signed articles. The effect of V. S. C. S. arts. 6149–6154, is to give the association a legal entity, distinct from its' members, but the language of the statute is that such an association may sue or be sued in its distinctive name, but the last-named article provides that the chapter is merely cumulative to other remedies now existing under the law, and, even if it should be applied to suits instituted by shareholders against the officers or trustees of such an association, under the authorities as we understand them, the plaintiffs in such suit are not required to make the association as such a party. Admitting that the association has an entity separate from its members, it is in this case, according to the allegations of the petition, only a name, and at most the association is a beneficiary, not as a separate entity, but in the sense that it includes its stockholders who are the real cestuis que trustent. We were mistaken in the original opinion in stating that no association had ever been formed. Taking the allegations of the petition as true, the articles of association were sufficient to create the association. The petition affirmatively alleges the formation of a joint-stock association, and further that those who promoted it and signed the articles vested the management of all the affairs of the association in a named board of trustees and their successors; said board having the power to elect a president, vice president, secretary, and treasurer, and to create such offices as the board may deem proper, filling them by appointment. The instrument further vests the title to all property acquired or to be acquired by the company in such trustees as joint tenants under a declaration of trust. The trustees have full power and authority, upon a vote of a majority of the board, to conduct the business of the company, make necessary repairs, borrow money upon such terms as they may deem proper, and to do and perform all things which in their judgment may be necessary in the management and conduct of the business. Their authority is limited only in that they are not to use the funds to secure oil and gas leases except as provided in article 2. In short, the articles of association substitute the trustees for officers, and confer upon them all the power and authority which are generally vested in the officers of such associations. It must be presumed from this statement of the powers conferred upon the trustees, limited only in the matter specified, that they were authorized to prosecute and defend suits in their own names. Here the plaintiffs, holding 200 shares of the stock, sue for themselves and for the use and benefit of all other shareholders who have bought and paid for their shares of stock. They excuse their failure to make all shareholders parties by the allegation that they have been denied the right to inspect the books and records, and that the defendants refuse to furnish them a list of shareholders. While this would not be an excuse for failing to make the association itself a party, the law relieves them of that duty, when it is shown that the trustees, by virtue of their office, may sue and be sued. A recovery under such circumstances would be for the benefit of the association and all stockholders not parties, and a judgment in such an action would be res judicata of all matters litigated. Canadian C. v. Johnson, 176 S. W. 385. Nothing more than a technical reason is shown for making the association a party to the suit. It has committed no wrong, and indeed it is difficult to see how it could do so separate and apart from the trustees. As shown by the petition, the legal title to the property is in the board, and not in the association. The equitable title is in the stockholders and the association. No effort is made to dissolve the association, to dispose of its property, or wind up its affairs.

The case of Anderson v. Stockdale, 62 Tex. 54, is one where the legatee under a will sued the executor of the will, who had conveyed land to a joint-stock company, joining as defendants in the suit only the trustees of the company. The instrument there, as in this case, vested in the company the legal title to the land in certain trustees, and conferred upon them, as in this case, completed power over the property, including the right to convey it. Neither the company nor the stockholders were made parties. Exception was urged to the petition upon the ground of misjoinder in failing to make the stockholders parties. No objection was made because the company as such had not been made a party, but the disposition made of the demurrer and the language used in overruling it is applicable here. Quoting from Kerrison v. Stewart, 93 U. S. 160, 23 L. Ed. 843, the court said:

"It cannot be doubted that under some circumstances a trustee may represent his beneficiaries in all things relating to their common interest in the trust property. He may be invested with such powers and subjected to such obligations that those for whom he holds will be bound by what is done against him, as well as what is done by him. The difficulty lies in ascertaining whether he occupies such a position, not in determining its effect if he does. If he has been made such representative, it is well settled that his beneficiaries are not necessary parties to a suit by him against a stranger to enforce the trust * * * or to one by a stranger against him to defeat it in whole or in part. * * * In such cases the trustee is in court for and on behalf of the beneficiaries; and they, though not parties, are bound by the judgment, unless it is impeached for fraud or collusion between him and the adverse party. * * * Here the trustees came

within that principle, and it was not necessary to make the stockholders parties to the suit."

This is not an action by a third party, but, as shown by the petition, the plaintiffs and named defendants are all stockholders, and for a stronger reason the doctrine announced applies to this case. That the trustees would have the right in their own name to sue as individual stockholders to recover the amounts subscribed by them will not be questioned. If under their powers they can institute such a suit either in their own names or in the name of the association, we think the reverse of the rule unquestionably applies. The case as made by the pleadings is one in which the defendants, trustees, are sued by some of the beneficiaries, alleging insolvency of the trustees, breach of trust, misconduct, misapplication of trust funds, use of their authority as trustees of the fund for their own personal profit, refusal to account for and pay over income, fraud in executing a fictitious note and mortgage, loss of trust funds through employment of irresponsible parties selected by them to perform the very duties imposed upon them by the articles for personal execution, alleging danger of further loss by reason of negligence and carelessness, and we think the rules governing in cases of trust and the appointment for receivers for trust estates applies. City of Austin v. Cahill, 99 Tex. 172, 88 S. W. 542, 89 S. W. 552, is a case where the appellee sued the city, praying for a mandamus requiring it to levy a tax for the purpose of paying interest alleged to be due on certain bonds previously issued by the city. The contention was made that the bondholders who had not been made parties were necessary parties to the action. The Supreme Court held that the act of the Legislature which created the sinking fund made the city a trustee for the benefit of the bondholders, and, contrary to the general rule, it was not necessary for the latter to be made parties. The opinion contains an exhaustive review of the authorities. After conceding the general rule that cestuis que trustent ought to be made parties, it said in part:

" 'To this rule there are well-recognized exceptions, but these embrace mainly that class of cases where, by reason of the number of beneficiaries, it is inconvenient to make them parties, and where it may be presumed that it was the intention to invest the trustees with power to prosecute and defend suits in their own names. An apt illustration of the exception is found in the case of the trustees in a mortgage to secure a series of negotiable bonds upon the property of railroad companies. Shaw v. Railroad, 5 Gray [Mass.] 162. Another illustration is afforded by the case of an assignee in the deed of an assignment made by an insolvent for the benefit of his creditors. Kerrison v. Stewart, 93 U. S. 155, 23 L. Ed. 483. The appointment of an assignee in such cases generally grows out of the necessity of having some agent to act for beneficiaries, who are usually too numerous to act together. In such case the presumption is great that he is their representative, not only as to the general management of the assets, but also to prosecute and defend suits involving title to the assigned estate.' In the City of Sherman v. Williams, 84 Tex. 421, 19 S. W. 606, 31 Am. St. Rep. 66, it was developed that a lot of land had been taken by the city to meet a tax collector's default as to a special fund created in the interest of outstanding bondholders. A judgment creditor of the city levied execution upon the property and caused it to be advertised for sale, when the city brought suit to enjoin the sale, on the ground that the property, being held by it for the special fund mentioned, was not subject to sale to satisfy the execution. The city, it is apparent, was acting in effect as trustee for the outstanding bondholders, but the right of the city to maintain the suit was not questioned by counsel for the court, and the final relief prayed for was granted."

These causes declare the equitable doctrine of virtual representation, under which only parties must be joined who fairly represent the interest or right involved so that the case may be tried fairly and honestly. Smith v. Swormstadt, 16 How. 288, 14 L. Ed. 942; Grafton v. Holt, 58 W. Va. 182, 52 S. E. 21, 6 Ann. Cas. 403. The doctrine of virtual representation has been often recognized and applied in cases of trusts where those beneficially interested are represented by executors, administrators, assignees in bankruptcy, trustees in insolvency, conventional trustees for the benefit of creditors, and receivers. Baltimore v. United R., etc., Co., 108 Md. 71, 69 Atl. 436, 16 L. R. A. (N. S.) 1006. Chief Justice Marshall evidently had this rule in mind when in Hopkirk v. Page, Fed. Cas. No. 6697, he said:

"Where the interest of one person is involved in that of another, and that other possesses the legal right so that the interest may be asserted in his name, it is not I think, always necessary to bring both before the court."

The doctrine has in many cases been applied to members of unincorporated associations. Suits in equity may be brought by or against some of the members of the association as representatives of all the members, especially where the defendants in such cases were managing officers or trustees. Martin v. Dryden, 1 Gilman (Ill.) 187; Whitney v. Mayo, 15 Ill. 251; Goldman v. Page, 59 Miss. 404; Von Schmidt v. Huntington, 1 Cal. 55. The rule has also been applied in a suit to enjoin a strike of laborers where the court held that it was sufficient to bring in the leaders of the strike to represent the organization, regardless of their official relation to their society. American Steel, etc., Co. v. Wire Drawers', etc. Unions, Nos. 1 and 3 (C. C.) 90 Fed. 598. 20 R. C. L. p. 669, § 9, states the rule in this language:

"As an exception to the rule that all persons having an interest in the subject-matter of an equity suit must be made parties, the doctrine of virtual representation which originated at an early date recognizes the right of a few persons to sue for themselves and all others similarly situated. Under this doctrine the persons who are not joined by name as parties are in a sense before the court. They have been called quasi parties and have even been said to be parties in substance and legal effect. In all cases to which the doctrine of representation applies there must be joined as parties persons who fairly represent the interest or right involved so that it may be tried fairly and honestly. It is sufficient if the parties before the court enable it fairly and fully to adjudicate the question involved. The parties represented must have a common interest with those before the court, and consequently the parties before the court cannot act as representatives, if their interests are antagonistic to those who would be represented. * * * And so a suit in equity may be brought by some of the members of an unincorporated association as representatives of all the members, whether organized for public or private purposes, and in some of the cases relating to the members of such associations stress has been laid on the fact that the members are numerous. The doctrine of representation has also been recognized in cases of trusts, so that persons beneficially interested are considered as represented by one occupying a trust relation, especially when the cestuis que trust are numerous so that it would be impracticable to bring all of them before the court."

Section 11, Id., extends the doctrine to parties defendant, saying:

"Apart from the question of the parties being numerous, this rule of representation has been applied to defendants representing as trustees all parties having a beneficial interest in the subject-matter," etc.

The essence of the rule as recognized by the decisions is that, where the party holding the legal estate is a party to the suit, those having merely an equitable interest need not be made parties defendant unless the rights of those holding the equitable interest are in some way antagonistic and adverse to that asserted by the plaintiffs. It is clear that in the instant case the Texline-Burk Oil Company, as such, could not, if it were a party, assert any adverse interest to that of the plaintiffs herein. The wrongs complained of by the plaintiff are certainly a violation of the rights of the association, as well as of all its members. Carleton v. Roberts, 1 Posey, Unrep. Cas. 587, says:

"While the rule that all parties in interest ought to be made parties is well established, so also are the exceptions to it. * * * Another is where parties form a voluntary association for public or private purposes, and those who sue or defend may fairly be presumed to represent the rights and interests of the whole. In these cases the suit may well be brought by the plaintiff, either alone or with others, in behalf of himself and all others interested. Story's Eq. Pl. 94, 97, 114a, 115."

[5, 6] Appellate courts will not ordinarily interfere in the appointment of receivers unless a clear abuse of discretion is shown. 23 R. C. L. p. 10, § 4. In any event, under rule 62a (149 S. W. x) which provides that no judgment shall be reversed on appeal, on the ground that the trial court has committed an error of law, unless the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court, the appointment without the association being a party is not reversible error. Appellants filed no motion to discharge the receiver, and did not raise the question of nonjoinder in the trial court. See, also, Schuster et al. v. Crawford, 199 S. W. 327, and authorities; Slaughter v. American Baptist Publication Society, 150 S. W. 224. We have discussed this question upon the theory that the association belongs to the class designated as "trusts" by Wrightington in his work on Unincorporated Associations (page 4). It is not clear from the petition what authority the stockholders may have over the board of trustees in directing the affairs of the association, but some of the provisions of the articles of the association seem to indicate that, while the promoters intended to create a joint-stock association, yet, under the rules of law announced in the decisions in section 14 in Unincorporated Associations, the Texline-Burk Oil Company should be held to be a partnership rather than a joint-stock association. Of course, if it is a partnership under the rules announced in that section, the association could not be sued by name, since a partnership, regardless of the name in which its business may be conducted, is not a legal entity.

[7-10] A necessary party is one who is so vitally interested in the subject-matter that a valid decree cannot be rendered without his presence as a party. Biggs v. Miller, 147 S. W. 632. This being the test, it is clear, we think, that the association is not a necessary, though it may be a proper, party. Appellants have waived the question of nonjoinder of proper parties by failing to raise it in the lower court. The case made by the pleading being one in which trustees are sued by some of the beneficiaries in behalf of others alleging insolvency of the trustees, breach of trust, misconduct, misapplication of trust funds, use of their authority as trustees of the fund for their own personal profit, refusal to account for and pay over income, fraud in executing a fictitious note and mortgage, loss of trust funds through employment of irresponsible servants selected by them to perform the very duties imposed upon them.

by the articles for personal execution, and danger of further loss by reason of want of care and attention, the rules governing in cases of trust and the appointment of receivers for trust estates apply. It is uniformly held that such facts, even under general equity practice, are grounds for the removal of such trustees and the appointment of receivers, at least until new trustees are selected. Perry on Trusts (6th Ed.) § 275; 39 Cyc. pp. 261–264.

"Notwithstanding the aversion already indicated which courts of equity entertain toward the appointment of receivers to displace trustees, except for good cause shown, it has been held when the object of the action was the removal of a trustee from his trust on the ground of unfitness, that the court might properly appoint a receiver pendente lite, the propriety of relief in such case being regarded as a matter resting in the discretion of the court to which the application was addressed. When land is devised to a trustee to hold and manage it and to pay the rents and income to certain beneficiaries, the insolvency of the trustee and his misapplication of the proceeds of sales of the property and his failure to apply the income in accordance with the terms of the trust, and his appropriation of such income to his own use, constitute sufficient ground for an injunction and a receiver in an action by the beneficiaries for an accounting. * * * So the withholding of trust funds by defendant is sufficient ground for a receiver upon a bill by the beneficiary for an accounting as to such funds." High on Receivers (4th Ed.) § 697.

[11] Appellant's next proposition is that the court was not warranted in appointing the receiver ex parte. It is true that the general rule is that receivers should not be appointed except upon notice and hearing, but under the allegations here we think the rule should not be applied. As stated above, this is not a suit in which the appointment of a receiver is the only relief sought. A fair consideration of the petition shows that it is an action against trustees, brought by the beneficiaries for themselves and others whose names they were not able to learn, after diligent effort, alleging many things authorizing, if true, not only a personal judgment against the trustees, but showing many well-recognized grounds for the appointment of a receiver. We quote from 23 R. C. L. p. 38 et seq., as follows:

"Courts of equity are adverse to interfering ex parte and will not ordinarily entertain an application for the appointment of a receiver except upon notice to the adverse party. Such a court has no more power than any other court to condemn a man unheard and to dispossess him of property prima facie his and hand over its enjoyment to another on an ex parte claim for it. It should therefore exercise extreme caution in the appointment of receivers on ex parte applications and be careful that a proper case is presented before it acts, and it should not be done without notice to the party whose property is to be affected,

220 S.W.—8

except in cases of the greatest emergency, demanding immediate interference of the court."

The text states the rule as shown by the cases in the note, where it is sought to deprive one of property to which he has a clear right, and the claim of the applicant is doubtful, but we have no such case under consideration here. As stated, the defendants in the main are trustees, charged with certain specified duties, while the applicants are the beneficiaries, rendered helpless, unless aided by the court, by the instrument framed by the trustees and constituting them such. We quote further (Id. p. 39):

"The general rule that notice must be given to the adverse party of an application for the appointment of a receiver is not inflexible, but yields to an imperative necessity for an ex parte appointment to prevent irreparable loss. Thus it has been frequently held that notice might be dispensed with in cases where it appeared that the defendant was insolvent and was disposing of his property with the intention of placing it beyond the reach of his creditors. It must, however, clearly appear that the danger is real, and that the delay incident to the giving of notice will result in an irreparable injury, and the defendant should be afforded a speedy hearing on a motion to vacate the order."

In this case no motion was made, but the appellants content themselves with bringing the case to this court and attacking the trial judge's action solely upon the sufficiency of plaintiff's allegations to sustain it. Quoting further:

"Moreover, it has been held that a receiver will not be appointed without notice when a court has the powers to grant a temporary restraining order without notice and the same is ample to protect the property until notice is given and the application for a receiver heard and determined." Id. p. 39.

While it is true that a temporary restraining order might meet the ends of justice, in so far as several grounds stated in the petition are concerned, as to others, even a mandatory injunction would not be an adequate remedy. These principles, of course, have been applied in jurisdictions where the remedy rests purely upon equitable rights. In this state the right to a receiver has been extended, broadened, and defined by statutory enactment. Article 2128, V. S. C. S. subd. 1, authorizes the appointment of receivers where partners or others jointly owning or interested in any property or funds show that the property or fund is in danger of being lost, removed, or materially injured. The facts alleged bring this case within that statute. They not only show danger of loss, but actual loss, and the effect of the statute is to entitle them to a receiver without further negativing the existence of an adequate remedy at law. Such has been the holding of the courts of this state with reference to

applications for injunction as well as for receivers. Acme Cement Plaster Co. v. American Cement Plaster Co., 167 S. W. 183. In the case of Temple State Bank v. Mansfield, 215 S. W. 154, it was shown by the petition that a trust fund in which appellee was interested was held by that bank with notice of the terms of the escrow agreement under which it was deposited; that the bank refused to furnish any information as to the condition of the account, referring the plaintiff for such information to one James E. Ferguson, who also failed and refused to furnish the desired information. There was no allegation of insolvency, but a prayer for a receiver. Judge Pleasants said:·

"We think the allegations of the petition were sufficient to authorize the court to appoint a receiver of the fund. Subdivision 1 of article 2128, V. S. C. S., expressly authorizes the appointment of a receiver 'in an action * * * between partners or others jointly owning or interested in any property or fund, on the application of * * * any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.' We think, when the trustee of a special fund held under an express trust not only refuses to execute the trust, but refuses to give any information to a joint owner of the fund as to its condition, or as to where or in whose name it is held or deposited, it may be reasonably inferred that the fund is in danger of being 'lost, diverted, misapplied, and put beyond the reach of plaintiff and of this court.' And such allegation in the petition in this case, being a reasonable inference from the facts alleged, is not a mere conclusion of the pleader.

"The right to have a receiver appointed under any of the first three sections of the article above cited is a legal right, not dependent upon the general rules of practice in courts of equity, and, when the facts alleged in a particular case as grounds for the appointment of a receiver bring the case within the provisions of either of these sections of the article, allegations and proof of insolvency of the defendant, inadequacy of legal remedy, or other equitable grounds for the appointment of a receiver are not required to authorize such action by the court. Cotulla v. Mortgage Co., 86 S. W. 340; Shaw v. Shaw, 51 Tex. Civ. App. 55, 112 S. W. 127; Sumner v. Crawford, 91 Tex. 130, 41 S. W. 994. [See, also, 23 R. C. L. p. 31, § 28.]

"We are further of opinion that the facts alleged were sufficient to justify the trial court in concluding that for the full protection of plaintiff's rights the immediate appointment of a receiver was necessary, and authorized such appointment without notice to the appellant."

[12] The allegations of a petition to which no answer was filed must be taken as true on hearing a motion of plaintiff to appoint a receiver. Simpson v. Alexander, 188 S. W. 285. We think the court was not only authorized by the allegations in the petition to appoint the receiver ex parte, but might have

appropriately issued a temporary restraining order preventing the bank from proceeding to collect its fictitious note under the power of sale in the mortgage. The powers given the receiver, however, are probably broad enough to meet the emergency. The prayer of the petition does not specifically ask for the removal of the trustees, but it is said in High on Receivers (4th Ed.) § 704:

"When real estate has been devised to trustees upon certain specific trusts, and a receiver of the estate is appointed upon the ground of their misconduct and incapacity, it is proper, upon the appointment of new trustees, that the management of the estate should be transferred from the receiver to such new trustees, and the court will so order if satisfied that it may be done without injury to the legatees under the will, and when it is apparent that it will result to the advantage of the estate by doing away with the ·expense of the receivership. The prayer of the petition being for general and equitable relief, and the pleading failing to show the right of the beneficiaries to elect other trustees, if need be, to succeed the receiver in the management of the estate, presents merely a question of practice resting in the sound discretion of the trial court, and is not ground for objection to the appointment of the receiver in the first instance." McCord v. Nabours, 101 Tex. 494, 109 S. W. 913, 111 S. W. 144.

It would needlessly prolong the opinion to discuss the authorities cited by appellant in detail, and to show wherein we think they do not apply to the several allegations of fact contained in the petition. A summary of these allegations is made above, and the applicability of most of the authorities may be disposed of by the general statement that they are not cases applying to receiverships of trust estates. The petition, we think, shows a case clearly within the terms of the statute, and the matter of the appointment was within the sound discretion of the trial judge, and no such abuse of that discretion appears that would warrant this court in reversing his judgment. If upon a trial it should appear that the facts as alleged are not true, that the appellants are not guilty of the wrongs charged, and that the receiver was improvidently appointed under the statute and rules relating to receiverships, appellants have an ample remedy for any wrong inflicted.

We believe we have disposed of all the questions presented in appellants' brief. Being convinced that we were in error in some particulars in quoting from the record, and in the position taken upon some of the propositions of law, the original opinion is withdrawn, and this is made the opinion of the court.

Believing that the conclusion reached in the original opinion is correct, the motion is denied, and the judgment is affirmed.