WILLIAM HOLMES, administrator, &c. *vs.* JOHN BACON et al.

Where J. K. with E. as security or indorser, was indebted to J. B., who was secured by a deed in trust, and afterwards E. applied to J. B. through his agent to pay the debt by giving a sight draft on A. & Bro., which the agent was assured would be paid promptly; and relying upon the promises of E. the agent took the draft and delivered the note to E. and had the deed in trust cancelled. It turned out that E. had no funds in the hands of A. & Bro., and the draft was protested for non-payment; and in the mean time J. K. died, when a bill was filed against E. and the administrator of J. K., alleging fraud in the cancelment of the deed in trust, seeking to have it restored and the property embraced in it sold to satisfy the debt. *Held*, that in the absence of every thing tending to show that the debt had been paid, it was proper to render a decree against the administrator of J. K., to restore a security of which the creditor had been deprived by fraudulent means.

IN error from the southern district chancery court at Natchez; Hon. B. C. Buckley, vice-chancellor.

The bill was filed by Bacon et al. against Holmes as administrator of Mrs. Kirkland, B. B. Ellis, and Joseph L. Roberts.

It alleges that on the 9th of April, 1842, Mrs. Kirkland, being indebted to complainants in the sum of $2,587.25, made her three promissory notes to J. L. Roberts, attorney, and on the same day executed a deed of trust, conveying certain slaves to B. O. Smith and J. L. Roberts, as trustees, with power to sell the slaves, if the notes were not paid; that Roberts was the agent and attorney of complainants, and that the debt was their property; that the two first of said notes had been paid, and a payment made on the third, leaving a balance on the 16th March, 1848, of $644.35; that on the 16th March, 1848, Ellis, who was the son-in-law of Mrs. Kirkland, and an indorser or surety on said note, came to the office of complainants' agent

in Natchez to settle, as he said, the balance due on said note, and proposed to give complainants' agent a sight draft on Andrews & Bro. of New Orleans, in payment thereof, representing that said draft would be paid on presentation; all of which complainants' agent believed, and agreed to receive the said draft in payment and satisfaction of said balance; whereupon Ellis drew his draft on Andrews & Bro., New Orleans, for $644.35, payable to said Roberts, agent, &c., and complainants' agent thereupon gave up the old note, and also gave an order to the clerk of the probate court, stating that Mrs. Kirkland had satisfied the deed of trust, and directed him to deliver the original deed of trust to Ellis, and on the 20th March, satisfaction was entered on the deed.

They charge that Ellis committed a fraud upon them, as he neither had funds in the hands of Andrews & Bro. nor any authority to draw on them for said amount, and said draft was protested. When it was presented for payment by the notary he was answered by said Andrews & Bro. that the drawer was unknown to them, and they would not pay it.

Aver that B. O. Smith and Mrs. Kirkland are dead, and that Holmes is administrator of Mrs. Kirkland.

Pray that defendants may answer; that the payment and satisfaction of said note and deed of trust may be declared void, and that said balance is still due to complainants; that Holmes, as administrator, may be decreed to pay said balance, and on his failure, that Roberts or some commissioner to be appointed, may be ordered to sell as many of the negroes as will be sufficient, &c. &c.

Holmes, as administrator of Mrs. Kirkland, answers, admitting the making by his testatrix of the notes and deed of trust. He knows nothing of the consideration of said notes, or of her indebtedness to complainants prior to their execution, nor does he know or admit that they were made payable to Roberts as attorney of complainants; does not know or admit that any balance was due on said notes on the 16th March, 1848; and knows nothing whatever of the transactions alleged to have taken place between Ellis and complainants' agent.

A decree was rendered in favor of the complainants, and Holmes, administrator, prayed a writ of error to this court.

*J. B. Coleman,* for appellant.

*George S. Yerger,* for appellees,
Cited 1 Story, Eq. § 192, 193; 3 Cranch, 170; 3 Fairfield, 262; 4 How. 451; 14 Ves. 273; Ib. 289; 10 S. & M. 169.

Mr. Justice HANDY delivered the opinion of the court.

The facts of this case are in substance, that the plaintiff's intestate, Jane Kirkland, was indebted to the defendants in error by a promissory note on which one Ellis was surety or indorser, and which was secured by a deed in trust; and in the month of March, 1848, Ellis applied to the defendants in error, through their agent, to pay the debt, by giving his sight draft on Andrews & Brother of New Orleans, which he assured the agent would be promptly paid; and relying on this assurance the agent took the draft, delivered up the note to Ellis, and had the deed in trust cancelled. It turned out that Ellis had no funds in the hands of Andrews & Brother, and the draft was protested for non-payment.

This bill was thereupon filed against Jane Kirkland's administor and Ellis, who was her son-in-law, alleging that Ellis had procured the cancelment of the deed in trust by fraud, and seeking to have the deed restored and that the property embraced in it should be sold in satisfaction of the debt.

The administrator answers simply denying all knowledge of the alleged transaction between Ellis and the agent of the defendants in error, and insisting that no sufficient ground is shown by the bill against Mrs. Kirkland for restoring the deed in trust. Ellis died before answer, and the bill was taken as confessed against his administrator who was made a party.

The decree was for the complainants, and this writ of error is prosecuted by Jane Kirkland's administrator.

From the pleadings and proof in the case there can be no doubt but that Ellis practised a fraud upon the agent of the defendants in error in obtaining the discharge of the deed in

trust, which would subject him to liability and be good ground for restoring the deed in trust if it had been an instrument made by him. But the question is, whether his fraudulent conduct is a sufficient ground for restoring the deed so as to affect the rights of Jane Kirkland. If she derived a benefit from his deceit, though not a party to it, or if no consideration was paid by her to Ellis in consequence of which he discharged the deed in trust by giving his draft, or if after that time no payment was made by her to him of the note taken up by him, the debt would still remain unpaid by her, and she would be bound to pay it, and could make no just objection to the security given by her being restored. If the note is outstanding in the hands of Ellis, she is still liable to pay it, for aught that appears in the record, and it is but just that it should be paid to the defendants in error and not to Ellis. If it has been paid to Ellis or to any other person, it is not a little strange that Ellis did not show that fact by answer, and that the administrator of Jane Kirkland does not allege any thing of the kind in his answer. If she had actually paid it, it is to be presumed that some evidence of that fact could be found among her papers, or by information in relation to it derived from Ellis by the administrator.

In the absence of every thing tending to show that the debt had been paid by her, we think it but just to presume that it remains unpaid. Her administrator, therefore, cannot complain of a decree which simply compels him to pay a debt of his intestate which remains unpaid, and to that end, restores a security of which the creditor had been deprived by fraudulent means.

The decree is affirmed.