## THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* THE UNITED RAILWAYS AND ELECTRIC COMPANY.

*Trustee in a Mortgage to Secure Bonds Represents the Holders—Power of Court to Authorize Sale of Property Discharged from Mortgage.*

The trustee in a mortgage executed to secure the payment of a number of bonds represents the holders of the bonds in a legal proceeding respecting the trust property, such as an equity suit for the sale of part of the property covered by the mortgage, and the re-investment of the proceeds.

The United Railways Company executed a first mortgage of all its property to secure the payment of certain first mortgage bonds, and afterwards executed another mortgage to secure certain income bonds. The first mortgage contained a clause authorizing the trustee to release from its operation property not necessary for the use of the company, and which the company might desire to sell. There was no similar authority in the second mortgage, but it was declared to be subject to

the provisions of the first mortgage.   Upon a bill by the railway company against the trustee in the second mortgage, alleging that it was for the interest of all parties that certain unproductive property be sold and the proceeds invested, subject to the lien of the mortgage, *held*, that the trustee in the mortgage represented the bondholders, and that the Court had the power to authorize the sale of such property, discharged from the lien of the mortgage.

*Decided April 1st, 1908.*

Appeal from the Circuit Court No. 2, of Baltimore City (GORTER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*Joseph S. Goldsmith* (with whom was *W. Cabell Bruce* on the brief), for the appellant.

*Joseph C. France* and *William S. Bryan, Jr.*, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant agreed to purchase from the appellee a lot of ground in the city of Baltimore, and has raised the question whether it can be conveyed free from the lien of the appellee's "income mortgage."   The Articles of Agreement of Consolidation, dated March 4th, 1899, under which the appellee was formed provided for; (1) first consolidated mortgage bonds of the par value of $38,000,000, which were secured by a mortgage, dated March 6th, 1899, to the Continental Trust Company, trustee, which included the existing and after acquired property of the consolidated company—subject to certain liens given by some of the constituent companies; (2) Cumulative four per cent preferred stock, amounting to $14,000,000, and (3) Common stock.   It was further provided that the company could convert the preferred stock into four per cent cumulative income bonds, and on March 30th, 1899, there was executed to the Maryland Trust Company, trustee, a mortgage to secure those bonds.

The first consolidated mortgage (as well as those executed

by the constituent companies) contained the clause usual in railroad mortgages for releases of properties desired to be sold, but the income mortgage does not contain that clause. As a result of the consolidation, and of the consequently more economical operation of the railway system, the appellee had car barns, power houses, and other property which it could not use to advantage—some of which by reason of taxes, ground rents and other conditions were burdensome, instead of being beneficial to the company and its bondholders. It was therefore desirable for the stockholders and bondholders that such property be disposed of, so as to make use of the proceeds of sales in acquiring other property (which would be subject to the liens), or paying prior encumbrances.

With such objects in view a bill was filed on January 21st, 1901, by the appellee against the Maryland Trust Company, a trustee in the income mortgage, which alleged that the releasing clause, by mistake or inadvertence, had been omitted from that mortgage, and after showing the importance and advantage to the bondholders and the company of disposing of the properties which were no longer of use, and which could not be advantageously held by the company, as they were unproductive, it prayed; 1st, That the Court assume jurisdiction of the trust created by the income mortgage, or so much of the property, rights, franchises, etc., as were not then, or could not from time to time, be needed, in the operation of the railway; 2nd, That the trustee be authorized and directed to release the lien from the property described, which had been sold to Mr. Michael Jenkins, upon condition that the purchase money be subject to the trust of the mortgage and be applied, under the authority of the Court, to the purchase of other property, which should be subject to the jurisdiction of the Court and to the lien of the income mortgage, or to the purchase of bonds which were liens upon the said property prior to that mortgage; 3rd, that the Court retain jurisdiction of the case and thereafter authorize the trustee to execute releases of the lien of the mortgage on such property as the company might sell under the authority of the Court, when

no longer needed for its railroad purposes or it be to the advantage of all parties interested, especially the bondholders secured by the income mortgage to have it sold; and 4th, For general relief. Sales of real estate aggregating $122,000 were made under a decree passed in that cause.

On. November 22nd, 1906, another bill was filed by the Continental Trust Company, trustee, under the first consolidated mortgage, John B. Ramsay, a holder of some of the first mortgage bonds, and Bernard N. Baker, the holder of income bonds, against the railway company, the Maryland Trust Company and a number of holders of income bonds. That bill prayed; (1), That the income mortgage be reformed and amended by insertion of a power to release from the operation of the mortgage property conveyed by it, which was not then or thereafter necessary or expedient to retain; (2), That the Maryland Trust Company be required to release such property whenever ordered by the Court, upon petition of the company, answer of the trustee and testimony taken;. (3), That the purchase money so received be deposited, subject to the order of the Court, in some trust company until its use for the purchase of other property, or the reduction of prior indebtedness, be authorized by the Court; (4), That the cause be consolidated with the prior one, above referred to; and (5), For general relief.

Mr. Arthur W. Machen, one of the bondholders who was made a defendant, filed an answer in which he alleged he had taken part in the preparation of both mortgages, that the releasing clause was omitted from the income mortgage *intentionally* because that mortgage did not, and could not, operate as a lien on property sold under the power in the first mortgage, that the complainant did not require the aid of the Court and neither he nor the other income bondholders were properly made parties and should be dismissed. Subsequently he and some of the other bondholders were dismissed and a decree was passed substantially as prayed for. Upon the petition of the Continental Trust Company the Court took jurisdiction over the first mortgage. An agreement of counsel filed in the

case shows that since January 21st, 1901, property has been sold, the purchase money of which amounted to $1,950,000, that in every instance testimony was taken, in support of the averments of the petition to sell property, before the Court authorized sales, and that the Court had passed orders directing that most of the proceeds of sales be expended in such manner as to improve the property of the railway company, "and to feed the mortgages to which the properties sold were subject," and the balance of the money was in bank.

It is perfectly manifest from this recital of facts shown by the record that the interests of the bondholders have been conserved by the proceedings taken, and that the Court has been careful to so direct the expenditures and investments o the purchase money from properties sold as would inure to the benefit of the bondholders. Instead of retaining unproductive and useless properties, some of which would have necessarily lessened the income of the company, if retained in the conditions in which they then existed, the proceeds of sales may, and doubtless will, increase the security of the income bondholders. It only remains, therefore, to determine whether such an order as that appealed from could be validly passed by the Court.

The petition of the railway company alleges that the appellant had entered into a contract to purchase a lot of ground, described in an ordinance referred to, for the sum of $10,000; that by order of the Court the sale had been approved and the Maryland Trust Company and the Continental Trust Company were authorized and directed to execute releases of the liens of their respective mortgages, and the purchase money was ordered to be deposited in the National Mechanics Bank of Baltimore, to be held subject to the further order of the Court. It prayed that the appellant be required to show cause why it should not accept the deed and deposit the purchase money, in accordance with the order of the Court. The appellant answered denying the power of the Court to pass the order authorizing the Maryland Trust Company to release the property from the operation of the mortgage. The Court

passed an order declaring that the Maryland Trust Company was validly authorized and empowered to release the property, and that upon tender of a deed executed by the railway company and the trustees in the mortgages, the appellant should deposit the money in accordance with its former order.

We have no doubt about the validity of the order, and are satisfied that the appellant can acquire title to the property free of the lien of the mortgage to the Maryland Trust Company, trustee, as well as of those which contain releasing clauses. In the first place, it would seem to be beyond peradventure that the trustee in this mortgage was intended to, and does represent the bondholders in all such matters as that now before us. The mortgage was given to secure fourteen thousand bonds, payable to bearer, with the usual provision that if registered they were payable to the registered holders —there being, according to the allegations of the bill filed in November, 1906, 13,940 bonds then outstanding. As they passed by delivery, unless registered, it would be practically impossible to bring all of the bondholders into Court, and before service of process could be had on some of those who would be made parties they might transfer them to others, not to speak of non-residents, &c. Yet it may be absolutely essential to the successful and economical conduct of a business, such as that carried on by this appellee, that some changes be made in the holdings of some of its properties. It is true that railroad mortgages generally have clauses in them, authorizing the trustees to make releases under the conditions therein stated, but it is because the necessity for such changes is likely to arise, and no intelligent investor is apt to hesitate to invest in bonds secured by such mortgages, by reason of such provisions. When it is done with the approval of the Court, the bondholders are not only protected but may sustain injury if it be not done. The custom is so well established in this country that a holder of railroad bonds may be presumed to know it and ordinarily to take them with that understanding.

The principle of representation by a trustee was thus announced by CHIEF JUSTICE WAITE in *Kerrison* v. *Stewart*, 93

U. S. 155, "It cannot be doubted that, under some circumstances, a trustee may represent his beneficiaries in all things relating to their common interest in the trust property. He may be invested with such powers and subjected to such obli-·gations that those for whom he holds will be bound by what is done against him, as well as what is done by him. The difficulty lies in ascertaining whether he occupies such a position, not in determining its effect if he does. If he has been made such a representative, it is well settled that his beneficiaries are not necessary parties to a suit by him against a stranger to enforce the trust," (citing a number of cases). "In such cases, the trustee is in Court for and on behalf of the beneficiaries; and they, though not parties, are bound by the judgment, unless it is impeached for fraud or collusion between him and the adverse party. The principle which underlies this rule has always been applied to proceedings relating to railway mortgages, where a trustee holds the security for the benefit of bondholders. It is not, as seems to be supposed by the counsel for the appellant, a new principle developed by the necessities of that class of cases, but an old one, long in use under analagous circumstances, and found to be well adapted to the protection of the rights of those interested in such securities, without subjecting litigants to unnecessary inconvenience." See also *Miller's Eq. Proc.*, 44 and 45; *Corcoran* v. *C. & O. Canal Co.*, 94 U. S. 741; *Shaw* v. *R. R. Co.*, 100 U. S. 611; *Richter* v. *Jerome*, 123 U. S. 233; *Beals* v. *Ill., &c., R. Co.*, 133 U. S. 290; *Elwell* v. *Fosdick*, 134 U. S. 500; *Phelps' Jurid. Eq.*, sec. 30; *Campbell* v. *R. R. Co.*, 1 Woods, 368.

In *Brown* v. *C. & O. Canal Co.*, 73 Md. 567, the opinion of Judge Alvey will be found. That was filed in the lower Court but was referred to with approval by this Court in *State* v. *Brown et al.*, 73 Md. 484. Judge Alvey said on p. 581; "it is certainly a well established general rule that trustees of a railroad or canal mortgage represent the bondholders *in all legal proceedings* carried on by them affecting the trust, to which the bondholders are not actual parties, and whatever

binds the trustees, if they act in good faith, binds the *cestuis que trust,*" then quoted from *Shaw* v. *R. R. Co.*, 100 U. S. 605, as this Court did in *State* v. *Brown, supra.* Indeed in other cases of trusts, the doctrine of representation is fully, recognized—such as executors and administrators, assignees in bankruptcy, trustees in insolvency, conventional trustees for benefit of creditors, receivers, etc., although, of course, such cases are not in all respects analagous to the one before us. They do, however, answer for purpose of illustrations of exceptions to the general rule, which requires those interested to be made parties to proceedings by which their interests will be affected, as "the doctrine of virtual representation rests upon considerations of necessity and paramount convenience, and was adopted to prevent a failure of justice." 15 *Ency. of Pl. and Pr.*, 629.

We can therefore have no doubt that in such proceedings as those in which the two decrees were passed, the trustees represented the bondholders and they, as well as the trustees, were bound by those decrees. The facts disclosed by this record would strengthen that conclusion, if it were at all necessary to find reasons for it beyond the clear and positive decisions on the subject. For in addition to it being clearly demonstrated that the interests of all bondholders—holding under either mortgage—are promoted by the decrees and are in no wise in conflict with those of the respective trustees, the income mortgage is not only made subject to the first consolidated mortgage, and the property included in it conveyed *"subject, however, to its provisions,"* but the bonds themselves made reference to it "with the same effect as if fully herein set forth." One of the provisions in the first mortgage was that authorizing the release of the lien from property which it was no longer necessary or expedient to retain for the operation, maintenance or use of the railway company, and there are other provisions which indicate that it was not intended to retain, subject to the income mortgage, properties which could be released from the effect and operation of the first mortgage. The holders of income bonds would not be permitted by a

Court of equity to question the right of the trustee to represent them in these proceedings, especially as they have resulted in giving them more protection than they could probably have demanded.

. Although we are much impressed with the points made in the answer of Mr. Machen—that it was not necessary, and perhaps would have been improper, to insert a releasing clause in the income mortgage, on account of the reference to the first mortgage and the provisions therein made—as the Court has taken jurisdiction of both trusts, and the bondholders can thereby receive full protection from any loss on account of the sales of such properties as the Court may authorize to be sold, we will not further discuss that answer but will affirm the order of January 4th, 1908, for the reasons above given.

*Order affirmed, the appellant to pay the costs.*