ADLER *et ux. v.* INTERSTATE TRUST & BANKING CO.

(In Banc. Feb. 20, 1933. Suggestion of Error Overruled April 17, 1933.)

[146 So. 107. No. 30093.]

T. J. Wills, of Hattiesburg, for appellants.

Stevens & Heidelberg, of Hattiesburg, for appellee.

220

Argued orally by **T. J. Wills**, for the appellant, and by **H. Stuart Stevens**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

The appellee, a Louisiana corporation, filed its bill in the chancery court of Forrest county against appellants,

resident citizens of that county, to set aside and annul
the cancellation of a mortgage on real estate in Forrest
county. The mortgage had been executed by appellants
to secure an indebtedness due by them to the Mortgage
& Securities Company, another Louisiana corporation.
Appellee was named as trustee in the mortgage, and had
canceled the mortgage of record at the instance of ap-
pellants and the Mortgage & Securities Company, which
cancellation was wrongful because the indebtedness se-
cured by the mortgage had not been paid. Appellee
thereupon took an assignment of the notes and mort-
gage from the holder of the notes, one McIlveen, and filed
its bill to set aside its cancellation of the mortgage and
reinstate and foreclose the mortgage for the purpose of
paying the indebtedness thereby secured. The cause was
tried on bill, answer, and proofs, resulting in the decree
prayed for. From that decree appellants prosecute this
appeal.

There is little, if any, conflict in the material evidence.
On March 1, 1923, appellants executed a mortgage to
secure an indebtedness due by them to the Mortgage &
Securities Company in the sum of $9,000, evidenced by
twenty promissory notes bearing that date; ten of the
notes were for the sum of five hundred dollars each, and
ten for the sum of four hundred dollars each; one note
for four hundred dollars and one for five hundred dol-
lars became due annually on March 1st each year, be-
ginning with the year 1924. The interest coupons on
all the notes were payable semiannually on the 1st of
March and September. Appellee was named as trustee
in the mortgage. The mortgage was duly recorded in
Forrest county. The notes evidenced a loan by the Mort-
gage & Securities Company to appellants and were se-
cured by a mortgage on lands in the city of Hattiesburg
in Forrest county. The series of notes are negotiable
instruments under the Negotiable Instruments Act (Code
1930, section 2657 et seq.). They, with their attached
coupons, were made payable to the Mortgage & Secur-

ities Company, or order, at its office in New Orleans. The notes recite that they are secured by a mortgage on real estate recorded in Forrest county, and that they are subject to payment in accordance with the terms of the mortgage.

The mortgage is substantially in the usual form, with the following exceptions: It provides that the mortgagor shall have the privilege on the 1st of March, 1924, and also on any semiannual interest payment date thereafter, of paying one or all of the notes secured thereby then outstanding "upon payment of all accrued interest to date of payment, and a premium of one and one-half percent of the amount so paid, having first given to the Mortgage & Securities Company sixty days previous written notice of their intention so to do." It provides that the trustee shall not be liable for any default on its part, except its own willful and fraudulent conduct, nor shall it be in anywise responsible to any extent whatever for any default upon the part of any of its agents or servants, "the parties hereto expressly assuming the risk incident to such defaults upon the part of said servants and employees." It contains this further provision: "It is further expressly stipulated and agreed by the grantors, that any covenants or agreements in this Deed of Trust contained which might affect the character of the notes secured hereby as negotiable instruments to the contrary notwithstanding, the said notes shall as regards the grantors and in favor of the Mortgage & Securities Company and all future holder or holders of the said notes be deemed negotiable instruments within the meaning and intendment of the Negotiable Instruments Act of the State of Mississippi with all of the qualities and characteristics thereof as stipulated in the said Act."

Appellants paid all the notes and interest coupons up to and including March 1, 1927. During the latter part of 1928, appellants notified the Mortgage & Securities

Company that on March 1, 1929, they desired to mature and pay the entire indebtedness, including interest, and in addition one and one-half per cent. thereon, as provided in the mortgage. This notice was given more than sixty days before the 1st of March, 1929. Upon its receipt the Mortgage & Securities Company informed appellants that the amount necessary to discharge the indebtedness, including the bonus as of date March 1, 1924, would be four thousand seven hundred eleven dollars and fifty cents, but that it was no longer the holder of any of the notes: that it had sold and transferred all the notes for value before maturity, and did not know who the holder was, but would make an effort to ascertain. There was considerable correspondence between appellants and the Mortgage & Securities Company during the winter of 1928-29, prior to the 1st of March, 1929. This correspondence evidenced the following agreement: Appellants were to pay over to the Mortgage & Securities Company the sum of four thousand seven hundred eleven dollars and fifty cents, the amount of the matured indebtedness and bonus as of date March 1, 1929. The payment was to be made on or before that date. The Mortgage & Securities Company agreed to find the holder of the notes, if it could, and pay them off and surrender them to appellants. The Mortgage & Securities Company was to have appellee, the trustee, cancel the mortgage. This agreement was carried out: the four thousand seven hundred eleven dollars and fifty cents was paid by appellants to the Mortgage & Securities Company by the 1st of March, 1929. Thereupon the Mortgage & Securities Company had prepared and presented to appellee as trustee an instrument canceling the mortgage. Appellee executed the instrument. At the time appellee executed the cancellation it was informed by the Mortgage & Securities Company that the entire indebtedness secured by the mortgage had been paid. Appellee had no notice at the time of the can-

cellation as to who was the holder of the notes. It supposed that the Mortgage & Securities Company was, Appellee knew nothing to the contrary, until the failure of the Mortgage & Securities Company, which took place later in the year 1929.

To repeat in a brief way: Neither the appellants nor the Mortgage & Securities Company knew who the holder of the notes was. Appellants said to the Mortgage & Securities Company: "We will pay the four thousand seven hundred eleven dollars and fifty cents over to you as our agent to find the holder and pay the notes and surrender them to us; in the meantime we want this mortgage cancelled, and we request you to have the trustee, appellee, cancel it." The Mortgage & Securities Company accepted the proposition, and the money was accordingly paid, and the mortgage canceled by appellee at the request of the Mortgage & Securities Company.

It is undisputed that one McIlveen was the holder in due course of all of these notes, and had no part in, and knew nothing of, the agreement above set out between the appellants and the Mortgage & Securities Company, and did not learn of it until the Mortgage & Securities Company failed, and went into the hands of a receiver for liquidation. It was not shown that he knew the mortgage contained the maturity clause, but if he did it is immaterial, as will be shown later. On August 5, 1929, the Mortgage & Securities Company wrote the appellants, as follows: "We enclose herewith cancelled First Mortgage Notes, Numbers 11 and 12, for four hundred dollars and five hundred dollars each, respectively, due March 1st, 1929, together with interest coupons, Numbers 11 to 20 inclusive, aggregating the sum of one hundred fifty-seven dollars and fifty cents, also due March 1st. The balance of the notes will be sent to you as soon as presented for payment. Please acknowledge receipt of enclosures." If the Mortgage & Securities Company knew at that time who the holder of the notes was, it

failed to so notify appellants; nor did it notify McIlveen, the holder of the notes, that the entire indebtedness had been matured and paid under the terms of the mortgage, and that it held the funds as the agent of the appellants for the discharge of the notes. As stated, McIlveen knew nothing of those facts until the failure of the Mortgage & Securities Company. This failure, as above stated, took place in the latter part of August, 1929. On September 10th, following, McIlveen learned of the failure, and that the mortgage had been canceled by the appellee. McIlveen represented to appellee that he was the holder and owner of the notes for value acquired long prior to their maturity; that they had not been paid, and therefore appellee had wrongfully canceled the mortgage. McIlveen claimed that under section 2153, Code 1930, appellee had become liable to him for the unauthorized cancellation of the mortgage. That section provides, in substance, that a trustee in a deed of trust may acknowledge satisfaction of the deed of trust in like manner as the cestui que trust may, and with like effect, but in such case the trustee shall be liable to the cestui que trust for the amount secured by the deed of trust. Appellee acceded to McIlveen's claim and discharged the indebtedness in consideration of McIlveen's transferring and assigning to it the notes and mortgage. This was done.

The Mortgage & Securities Company being insolvent, appellee thereupon filed the bill in this case against appellants to set aside and annul its cancellation of the mortgage, and to reinstate and foreclose the mortgage for the payment of the unpaid indebtedness. On proof, in the form of correspondence between appellants and the Mortgage & Securities Company, and documentary evidence and oral testimony, the chancellor found, in a written opinion made a part of the record, substantially what has been stated above to be the facts of the case. Such finding was amply justified by the evidence.

The principal question in the case is whether or not the payment by appellants to the Mortgage & Securities Company was a discharge of the notes. In considering this question these undisputed facts must be borne in mind. McIlveen, the holder of the notes, had no part in, nor knowledge of, the payment to the Mortgage & Securities Company; he learned of such payment for the first time after the failure of the Mortgage & Securities Company; the notes were negotiable instruments under the laws of this state; McIlveen was the holder of the notes for value in due course; although they were payable at the office of the Mortgage & Securities Company they were payable to the holder in due course, and appellee, as trustee, canceled the mortgage on the representation of the Mortgage & Securities Company that the notes had been paid; however, McIlveen had actual notice from the face of the notes that they were payable in accordance with the terms of the mortgage, and payable at the office of the Mortgage & Securities Company in New Orleans, and the mortgage gave him constructive notice that appellants had the right to mature all the unpaid notes on the 1st of March, 1924, or any semi-annual interest payment period date thereafter, by paying the outstanding notes and accrued interest and a bonus of one and one-half per cent. thereon, provided sixty days written notice of such payment should be given to the Mortgage & Securities Company. The mortgage provided further that nothing therein contained should be construed as in anywise affecting the negotiability of the notes.

The notes, although payable in Louisiana, were executed in this state and secured by a mortgage on property in this state. The mortgage expressly provided that the negotiable instruments law of this state should control the rights and obligations of the parties. We hold, therefore, that the questions involved are solvable by the laws of this state.

The payment of a note to a bank, which is payable there but has not been left with the bank for collection or presented there, is not a satisfaction of the note. In such case the bank is not the agent of the holder of the note. If, however, the person at the place designated for payment has possession of the note, payment to him is binding on the holder. The mere designation of the place at which payment shall be made does not alter the obligation of the maker as to the person to whom, or through whom, payment shall be made. He is still bound to see for himself that payment is made to the legal holder, whether he be the original payee or an indorsee, or to his authorized agent. 8 C. J. 601: 3. R. C. L.. section 522, p. 1289: section 2744. Code 1930: Union Station Trust Co. v. Bostick. 133 Miss. 627. 98 So. 105, 106; Anderson v. Moore Dry Goods Co.. 152 Miss. 312, 119 So. 914: Virginia-Carolina Chemical Co. v. Steen, 99 Miss. 504, 55 So. 47. 34 L. R. A. (N. S.) 734; Sivley v. Williamson, 112 Miss. 276. 72 So. 1008. Section 2744, Code 1930, is a section of the Negotiable Instruments Act; its caption is. "What constitutes payment in due course." and provides that payment is made in due course when made at or after maturity of the instrument to the holder thereof in good faith and without notice that his title is defective.

In the Bostick case our court, in construing this statute. used this language. in part: "It is the duty of the maker of a note to require its production before making payments thereon. and if he fails to do so he pays at his risk. The note itself is the only evidence the maker has the right to rely upon. He has the right to refuse payment until actual presentation." Citing Coffman v. Bank of Kentucky, 41 Miss. 212, 90 Am. Dec. 371; Crawford's Ann. Negotiable Instruments Law (4 Ed.), section 88, pp. 162 and 163, and notes; 8 C. J.. section 1060, pp. 801, 802. In the Anderson case the court. in construing the statute, reaffirmed the holding of the court in the Bostick

case. It was held in the Steen case that where the maker of a note contracted to pay the note at a certain bank and the holder of the note, for the convenience of the maker and at his request, forwarded the note for collection to another bank, the latter bank was the agent of the maker and not of the payee, and the payment to it did not discharge the note until the funds were transmitted to the payee. In the Sivley case the court held that the payment of a negotiable note to a person not in possession of the note was at the risk of the payer.

Appellants rely principally on two cases: Bank of Charleston Nat. Banking Ass'n v. Zorn, 14 S. C. 444, 37 Am. Rep. 733, and Lazier v. Horan, 55 Iowa 75, 7 N. W. 457, 39 Am. Rep. 167. The latter case was expressly overruled in Bank of Montreal v. Ingerson, 105 Iowa 349, 75 N. W. 351. The Bank of Montreal case held that the maker of a note, payable at a bank, could not discharge himself from liability thereon by payment to the bank which did not have possession of the note. In Bank v. Zorn the court used some language that appears to support appellants' contention. Yet the case itself does not fully sustain such contention. It appears that the pledgee of the note in that case knew that the course of dealing between the maker and the payee was such that the maker expected to pay the note through the shipments of cotton to the payee, who would deduct the amount due the maker for cotton, and the note was actually paid in this way.

Is this case removed from the operation of those principles by virtue of the maturity provision in the mortgage? We think not. As above stated, the mortgage provided that the maturity notice should be given by appellants to the Mortgage & Securities Company, but that nothing in the mortgage should operate to affect the negotiability of the notes. The notes, on their face, were in every respect negotiable instruments. When appellants sought to mature them by notice to the Mortgage

& Securities Company, none of them were due and payable. McIlveen was the holder in due course. He had the right to rely on the recitals on the face of the notes, and if he had gone and examined the mortgage securing them, he would have found nothing to the contrary. He would have been assured by the mortgage that nothing contained in it should in anywise affect the negotiability of the notes. He had no actual notice of appellants' attempt to mature the notes. Notes matured and overdue are not negotiable instruments in the full meaning of the negotiable instruments law. We hold that notice to the Mortgage & Securities Company did not constitute that company the agent of McIlveen to receive payment of the notes.

Conceding for argument's sake that the notice given by appellants to the Mortgage & Securities Company matured the notes in McIlveen's hands, it would not follow that his failure to present them for payment at the office of that company at the maturity date (March 1, 1929) discharged the notes, although if so presented they would have been paid. If the money for the payment of a note awaits the holder at the time and place of payment, this is equivalent to a tender by the maker, but it does not follow that, if the holder fails to present his note for payment, he forfeits the principal of the indebtedness and accrued interest. He only forfeits the unearned interest and attorneys' fees provided for in the note, and the costs of collection by suit. Brannan's Negotiable Instruments Law (4. Ed.), pp. 633, 634, 670; Moore v. Altom, 196 Ala. 158, 71 So. 681; Binghampton Pharmacy v. Bank, 131 Tenn. 711, 176 S. W. 1038, 2 A. L. R. 1377; National Bank v. Erion-Haines Realty Co., 213 App. Div. 54, 209 N. Y. S. 522; Maddock v. McDonald, 111 Or. 448, 227 P. 463; Forwood v. Magness, 143 Md. 1, 121 A. 855; United States National Bank v. Shupak, 54 Mont. 542, 172 P. 324.

It results from these views that the notes secured by

this mortgage had not been paid when the mortgage was canceled by appellee. McIlveen, the holder of the notes, had the right to have such cancellation set aside and annulled and the mortgage foreclosed for the payment of the notes. Equity will set aside the cancellation of a mortgage procured by accident, fraud, or mistake. 41 C. J. 822; Holmes v. Bacon, 28 Miss. 607; Eagle Lumber & Supply Co. v. De Weese (Miss.), 135 So. 490. In the latter case the cancellation of the mortgage was by the trustee who held a second lien on the property. The cancellation was wrongful. The trustee transferred his lien on the property to third parties. The court held that they were not entitled to enforce the lien as against the lien in the first deed of trust. The cancellation was held invalid, and the beneficiary in the original deed of trust entitled to enforce his lien.

We are unable to see why appellee did not have the same rights that McIlveen, the holder, had. It canceled the mortgage in good faith; it was done at the request of appellants, through the Mortgage & Securities Company, and was done on the representation that the notes secured by the mortgage had been paid. Appellee knew nothing to the contrary. Appellants constituted the Mortgage & Securities Company their agent to find the notes and pay them, and when paid surrender them to appellants. Appellee knew nothing of that arrangement. It is true that, when appellee canceled the mortgage without the notes having been paid, it breached its duty as trustee to McIlveen, the holder of the notes, but it breached no duty to appellants. Appellee paid the penalty of its breach of duty to McIlveen, the holder of the notes. In order to protect its rights it purchased the notes and paid value for them and took the chance of collecting them as the result of that breach of duty. Appellants having led appellee into the wrongful cancellation of the deed of trust cannot now complain of it. We are of the opinion that appellee stands exactly in the shoes of McIlveen, the holder of the notes.

At the time of the failure of the Mortgage & Securities Company, it was largely indebted to appellee; to secure that indebtedness appellee held certain collateral. The evidence tended to show that this collateral was insufficient to pay the indebtedness. Both of these institutions had some stockholders in common. Each of them had many stockholders; they were separate corporations; they were differently officered, except there was one person vice-president of both companies; each company had many directors; three or four of these directors were common to each corporation. As we understand, appellants made some such contention as this: That it follows from these facts that the two corporations were in fact one corporation, and that the knowledge of the Mortgage & Securities Company was the knowledge of appellee, and the agency of the Mortgage & Securities Company for appellants constituted appellee also such an agent. We fail to see the force of this position. The two corporations were entirely separate and distinct; they were separate entities—separate artificial persons.

It is argued that the fact that the Mortgage & Securities Company deposited the funds turned over to it by appellants for the payment of these notes with appellee was sufficient to put the latter on notice of appellants' rights. The evidence showed that the Mortgage & Securities Company was a large depositor with the appellee, but there was no evidence tending to show that this particular deposit, if made with appellee, was "ear-marked" so as to bring to its attention the source from which it came. We are unable to see any merit in this contention of appellants.

Affirmed.

**Ethridge, J.,** delivered a dissenting opinion.

I am wholly unable to agree with the controlling opinion in this case. In my opinion, neither McIlveen,

the holder of the notes, nor the Interstate Trust & Banking Company, as trustee, is entitled to recover from the appellants the amount of the notes. The notes read as follows:

"Mortgage and Securities Company.

"Note No. 13.      First Mortgage Note      $400.00

"For value received the undersigned jointly and severally promise to pay on the first day of March, in the year 193— without grace, to the Mortgage & Securities Company, or order, without deduction for any tax or taxes or charges which the undersigned may be required or permitted to pay or retain therefrom, the principal sum of four hundred dollars, with interest thereon from date until  maturity at the rate of seven per cent per annum, payable semi-annually on the 1st days of September and March in each and every year according to the terms of the interest coupons of even date herewith and hereto attached, together with ten per cent upon the amount of principal and interest then due on this note as attorney's fees, if placed in the hands of an attorney for collection under the provisions of the deed of trust securing this note. This note and the installments of interest bear interest after maturity at the rate of eight per cent per annum. Principal and interest are payable at the office of the Mortgage & Securities Company in New Orleans, La., in gold coin money of the United States in America, of, or equivalent to the present standard of weight and fineness.

"This note is secured by a first deed of trust on real estate duly recorded in the records of Forrest County, Mississippi.

"Dated at Hattiesburg, Miss., on the 1st day of March, 1928."

"Sam Adler
"Annie Adler

"This note is subject to prepayment in accordance with the terms of the deed of trust securing the same."

On the back of the note appears the following:

"Guaranty Agreement.

"A's the owner of this note by purchase from the maker, and as an inducement to third persons to purchase the same, the undersigned, under authority from its Board of Directors, hereby binds and obligates itself that in the event of any default in the payment of any installment of interest on this note it will, at the option of the holder, purchase at par, upon demand, the coupon or coupons evidencing said interest; and that in the event of default in the payment of the principal of this note, when due it will, at the option of the holder, within twelve months from the final termination of the necessary proceedings brought or taken to realize upon the securities pledged to or otherwise secured by the trust agreement in connection with which said note was executed, purchase this note from the holder thereof, for an amount equal to the principal and accrued unpaid interest thereon, less any amounts which may have been paid to the holder of said note out of the proceeds realized from the sale of the collateral securing same, or otherwise received by the holder of said note."

By the terms of the note, the holder thereof was given notice that it was subject to prepayment in accordance with the terms of the deed of trust securing the same, and by the terms of the deed of trust the entire indebtedness was subject to prepayment on any semiannual interest payment date—the 1st of March and the 1st of September in each year.

The holder of the notes, McIlveen, owed the duty to the maker of the notes to have them presented at the place named therein for payment of the semiannual interest and for the full prepayment under the terms of the deed of trust, of which he had full notice.

Due notice was given the Mortgage & Securities Company in accordance with the terms of the deed of trust of the decision to make prepayment of the outstanding

note, and the money for that purpose was placed with the Mortgage & Securities Company.

Had the holder of the notes presented them, they would have been paid. The contract making the notes payable at a given place imposed upon the holder thereof the duty of presenting them at that particular place for payment, and of authorizing some one to receive payment and surrender the notes.

Not only was the money there available for payment on one of the semiannual payment dates, but it remained there for such payment from that date until the following August.

The only provision of the deed of trust that was favorable to the grantor was: "It is further agreed and understood by and between the parties hereto that the grantors herein shall have the privilege on March 1st, 1924, or on any semi-annual interest payment date thereafter, of prepaying any one or all of the notes secured hereby and then outstanding, upon payment of principal, accrued interest to date of payment and premium of one and one-half per cent of the amount so prepaid, having first given to the Mortgage & Securities Company sixty days previous written notice of their intention so to do."

This provision clearly was intended to make the Mortgage & Securities Company, the payee, the agent of the holders of the notes, and the trustee for receiving notice of the makers' desire to prepay the notes before the several maturities. One note might be held by one holder, and another by another holder. The Mortgage & Securities Company was to be given the notice sixty days before the semi-annual interest dates, so that each holder of a note might have the notes at the office of the Mortgage & Securities Company for payment in full, as well as payment of the interest due. It was the duty of the holder of the note to inquire of the Mortgage & Securities Company whether such notice had been given, and to have the notes at the place of payment for that pur-

pose. In no sense was the Mortgage & Securities Company the agent, in that regard, of the mortgagor or the maker of the notes. The maker could not exercise his right in any other way. Any other construction of the deed of trust defeats, rather than protects, the right of the maker to advance the maturity of the notes. There were many provisions in the deed of trust to protect the holder of the notes and the grantee in the deed of trust. Among these was the right of the grantee to mature the whole series of notes if there was as much as five days' default in paying a note, or a like default in the payment of taxes. The advantages given to the payee of the deed of trust and notes are so numerous and stringent as to make the right to prepay a valuable and desirable one. Both parties have rights under the contract, and the rights of each should be impartially enforced. Suppose the holders of the notes should have elected to mature all notes, and to foreclose promptly after the interest and one note were in default: and the maker had the funds at the place of payment. but no one there with the notes to give receipts and accept payment. Would this court sanction such inequity?

If this suit is one in equity. and McIlveen was the complainant. he would not be entitled to any relief because he had not done equity, and could not come into equity with clean hands with reference to the matter. Had he done what was equitable he would have been paid, and the whole transaction would have been settled. See Bogert on Trusts. page 538; 3 Story on Equity (14 Ed.) 328, section 1696; 19 R. C. L., page 272. section 43; Mayor, etc., of Baltimore v. United Rys. & Electric Co., 108 Md. 64, 69 A. 436, 16 L. R. A. (N. S.) 1006, and note at page 1013; 26 R. C. L. 1279, sections 129-131.

How could the maker of the notes exercise the option of paying off any note on a semi-annual date where the holder of the notes was unknown, and where the notes were not presented at the place designated as the place

of payment? The maker had no recourse except to place the money with the payee of the notes, and have the trustees satisfy the mortgage of record.

It is certainly an inequitable and unrighteous result, when an appellant is prevented from exercising a clear contractual right, of which the holder of the note had knowledge, by the refusal of such holder to present notes for payment at the place where the payment was to be made. The right to prepay an indebtedness is a valuable right, and it was certainly the fault of McIlveen primarily, and of the trustee, the Interstate Banking & Trust Company, secondarily, not to have the notes presented for payment so the option to prepay could be exercised. 8 C. J. 549, 550.

In my view of the case, when the holder of the notes, McIlveen, purchased the notes, which showed that the right of prepayment could be exercised, the provision of the deed of trust constituted the Mortgage & Securities Company the agent, to act for the holder, and to receive payment.

The maker of a note can go to the place of payment and demand the production of his note upon tendering payment, and, if not produced, no interest will be allowed the holder because it was not presented for payment at such place. But it is doubtful whether the holder of such a note, suing in a court of equity, could recover even in that case, when he was in default in presenting the note at the place where the payment was called for, if the place of payment was a solvent institution. However, that is not the case here. In the case now before us a valid contract is involved and greater equity rests upon the holder of the notes in such a case.

The trustee, the Interstate Trust & Banking Company, cannot rightfully recover in equity, because it was even more grossly derelict in its duty, and probably more negligent than McIlveen, the holder of the notes.

Under section 2153, Code 1930, it is provided that:

"The trustee in a deed of trust may acknowledge satisfaction of the deed of trust in like manner as the cestui que trust may, and with like effect, but in such case the trustee shall be liable to the cestui que trust for the amount secured by the deed of trust."

The Interstate Trust & Banking Company, in fact, did satisfy the deed of trust of record. It knew the money was paid by the Mortgage & Securities Company, and was therefore subject to the trustee's demand for its possession, had it seen proper to make the demand. Moreover, the money was on deposit with the trustee, but in the name of the Mortgage & Securities Company. In fact, the very money that was paid by Adler and wife was placed in the bank by the Mortgage & Securities Company. In addition to this, the record shows that the Interstate Trust & Banking Company had assets belonging to the Mortgage & Securities Company which had been placed with the Interstate Trust & Banking Company as collateral security for the debt that the Mortgage & Securities Company owed the Interstate Trust & Banking Company.

It was the duty of the Interstate Trust & Banking Company, when McIlveen made demand upon it, to take steps to secure the money paid by Adler and wife, which money was under the control of the custodian until a receiver was appointed for the Mortgage & Securities Company, to have made claim that the money was trust funds deposited by Adler and wife for the benefit of the holder of the outstanding notes. The Mortgage & Securities Company was not entitled to take this money deposited by Adler and wife for the purpose of paying notes, and apply it to the satisfaction of the demands of their general creditors.

A trustee is not to take his duties too lightly. He owes a duty to both parties, and he must do what is reasonably necessary to protect the interest of each party. The trustee in the case at bar had the right, and it was its

duty, before marking the deed of trust satisfied, to see that the holders of the notes had been paid, or else to take funds for that purpose into its own control and possession. If the deed of trust had not been marked satisfied, Adler and his wife could have tendered the money to the trustee, and compelled it to enter satisfaction. See Mayor, etc., of Baltimore v. United Rys. & Electric Co., 108 Md. 64, 69 A. 436, 16 L. R. A. (N. S.) 1006-1013. To now say, after acting in such manner as to cause Adler and wife to lose the right of compelling a cancellation and tendering the money into court, that the trustee should be substituted to the rights of the holder of the mortgage, and to have the cancellation erased, and a judgment entered in its favor, would be wrong. It would be recovering in a suit founded upon its own wrong. The trustee would not, under the facts in this case, have been liable to the holder of the notes, because the holder of the notes had been negligent in presenting them; but even if it was liable, its act was such an inequitable one that equity could not afford it any relief. 21 C. J. 172, section 151 et seq.; 10 R. C. L. 392, section 1413, 1 Story Eq. Jur. 76, section 69. In 41 C. J. it is said that: ''The trustee is the representative of both parties to the deed, not of the creditor alone, and his relations must be absolutely impartial as between them. He must act fairly toward both parties and in the best interests of both, not exclusively for the benefit of either, his position in this respect being different from that of other mortgagees, as the ordinary relation of mortgagor and mortgagee is not that of trustee and cestui que trust.''

The trustee is in no position to assert an equitable demand. It could not get relief in any form. To allow it to recover would be to allow it to recover by its own wrong. This wrong was not brought about by the sole act of the Adlers, and the trustee did not rely upon the Adlers' statement that the money had been paid. The record shows that demand was made upon it to enter

satisfaction of the deed of trust, and that it relied upon the statement of the Mortgage & Securities Company that the money had been paid. 21 C. J. 180, section 163 et seq.; 10 R. C. L. 389; sections 139, 140; 1 Story Eq. Jur. (14 Ed.), p. 98, section 98.

The fact is that the Mortgage & Securities Company and the Interstate Trust & Banking Company are affiliated corporations. True, they are separate entities, but they have some officers and stockholders in common.

Whatever the right of the appellee at law, as complainant in the court of equity it cannot recover, because it has not come into court with clean hands, has not done equity, and consequently should not be heard, even if it must suffer a loss.

It is a fundamental principle of law that where one of two parties must suffer a loss, the one that must suffer is the one who could have prevented the loss—the one who was in a position to prevent it. Clearly the Interstate Trust & Banking Company, at the time the cancellation was made, had been, and was, able to take into its own control the funds paid to the Mortgage & Securities Company, and it was under duty to find out the facts. It seemed to be entirely satisfied with the funds in the hands of the Mortgage & Securities Company, and made no effort to communicate with the holder of the notes, or to take the funds into its own control.

I cannot see the justice or equity of allowing either McIlveen or the Interstate Trust & Banking Company to recover.

I think the payment should be treated as a compliance with the contract, and that the trustee should be treated as being in default, and consequently that it is not entitled to recover upon any theory.

Griffith, J., delivered a dissenting opinion.

As shown by the dissenting opinion of Judge Etheridge, the face of the note held by McIlveen gave him notice

that it was subject to prepayment according to the terms of the deed of trust securing same, and the deed of trust expressly provided that the mortgagor shall have the privilege on any semi-annual interest payment date, to pay the entire indebtedness, and to retire all notes then outstanding "upon payment of all accrued interest to date of payment, and a premium of one and one-half per cent of the amount so paid, having first given to the Mortgage & Securities Company sixty days previous written notice of their intention so to do." It is admitted on all sides that under this contract the only notice necessary to be given of the intention of the mortgagor to retire the entire indebtedness on any semiannual payment date was to the Mortgage & Securities Company, and that it was not necessary to give notice to any one else, the Mortgage & Securities Company being expressly made the agent to receive the notice. It follows, therefore, that when the mortgagor gave this notice to the Mortgage & Securities Company, as it is admitted he did give notice, then it became an accrued and matured right of the mortgagor, under the mortgage, to make full payment and retire the whole debt and all the notes evidencing same.

It is fundamental in the construction of contracts, and in their enforcement by the courts, that every valid part of the contract in question will be given full force and effect, and that no construction which operates to substantially neutralize any valuable provision will be adopted, if the contract is susceptible of any other construction which will give real effect to all the provisions; and this principle has had its restatement, in other words, which expresses an undeniable maxim of simple justice, that no man shall enforce a contract, taking only those features thereof which are favorable to him; but that in standing on his contract he must yield to the opposite party everything that the contract gives to that opposite party. And it is a corollary of that principle of justice,

that a party who stands upon, and claims the benefits of the provisions of a contract favorable to him, shall not be permitted, by resort to any device, to which he is a party, or with which he is legally connected, to defeat the opposite party of those provisions of the contract which are favorable to that opposite party, or of which he is entitled to avail.

But what has happened here? By the simple device of transferring these notes to another person than the Mortgage & Securities Company, and from that other person to McIlveen, so that the Mortgage & Securities Company could report, either truthfully or falsely, that it did not know who the owners were, then, says the majority opinion, the mortgagor has lost his right to mature and retire the debt, and that in paying to the Mortgage & Securities Company, thereby availing of the only method which he could avail of to promptly effectuate the right he had under the contract, he has lost his money, and will have to pay again. It had been taken out of the power of the mortgagor to know who held these notes, but McIlveen knew who held them, and knew the rights of the mortgagor with respect to them. It was McIlveen's duty, in fidelity to the contract, to acquaint the Mortgage & Securities Company with the fact that he had these notes, and that he was ready to surrender them for payment at any semi-annual interest date when the mortgagor should give notice of his intention to retire them. The majority opinion characterizes the mortgagor's conduct as negligent in paying to the Mortgage & Securities Company, who did not have the notes, when this was the only place he could pay to avail of the benefits of his contract, and the same opinion takes McIlveen out of any responsible part by emphasizing and making predominant, and as neutralizing the other provisions of the contract that McIlveen held negotiable notes, yet these notes, on the very face of them, gave McIlveen the notice of the very rights of

the mortgagor in the premises of which he was seeking to avail. The provision that the notes should be negotiable was not in conflict, or incapable of being harmonized with the provision for acceleration of payment. That provision did not trench upon negotiability in the sense in which that term is commonly construed, it had the effect only to advance the due dates of the notes and to require the holder to accept payment at the accelerated dates. Thousands of such contracts provide for acceleration both by the holder and by the maker of the notes, and this is the first time it has ever been held, as I believe, that such a provision is in derogation of negotiability. Nevertheless, the majority opinion, as said, raises this matter of negotiability to a commanding and controlling position, and as sweeping other provisions aside, even to the extent of neutralizing the provision to which we here call attention; and this, as I think, is not the law, and even more certainly it is not ordinary justice.

In my opinion there is but one way to make this contract operate in all its parts, to rid it of approval of resort to devices which defeat a valid portion of its terms, and do justice to all parties to it; that is to say, to require fidelity to this contract by all parties to it; and that is to hold that the Mortgage & Securities Company was not only the agent to receive notice of the mortgagor's intention to retire the notes, but to make the said company the agent to receive such accelerated payment as to all such persons as McIlveen, who held notes and kept the fact a secret from the mortgagor and from any person who could inform the mortgagor, and thereby rendered it necessary that payment should be made to the Mortgage Company, or else that the mortgagor should lose the right given by the contract to retire the notes. And since, in my opinion, McIlveen should be required to look to the Mortgage & Securities Company, and since the bank, appellee, has no higher

rights against the mortgagor than did McIlveen, I am of the opinion that the decree should be reversed and the bill dismissed; and I have written this separate dissenting opinion because I do not fully concur in the dissenting opinion of Judge ETHRIDGE, nor further than as herein expressed. Judge COOK joins me in this dissent.